15 U.S. 248
 4 L.Ed. 231
 2 Wheat. 248
 The UNITED STATES
v.
TENBROEK.
 March 15, 1817
 
 ERROR to the circuit court for the district of Pennsylvania.
 This was an action of debt commenced in the district court in Pennsylvania, by the United States against the defendant in error, to recover a penalty alleged to have been incurred for using a still, and distilling spirituous liquors, without having a license therefor, as required by an act of congress passed on the 24th of July, 1813.
 This act imposes a duty, according to the capacity of the still, on all stills employed in distilling spirits from domestic or foreign materials, and inflicts a penalty of 100 dollars, and double duties, on all persons who, after the first day of January then ensuing, should use any still, or stills, or other implements, in distilling spirituous liquors, without having first obtained a license, as required by the provisions of the act. For every license the act imposes a duty of nine cents for each gallon of the capacity of the still employed in distilling spirits from domestic materials for the term of two weeks, and in proportion for a longer period. And, on all stills employed in distilling spirits from foreign materials, a duty of 25 cents for each gallon of the capacity of the still for the time of one month.
 To the declaration, which was in the usual form, the defendant, in proper person, plead nil debet, on which issue was joined. It was proved on the trial, and admitted by the defendant, that he was the proprietor of a distillery within the district of Pennsylvania, which he used, and for which he had not taken out a license, agreeably to the act of congress before recited. It was also proved, on the part of the defendant, that his distillery was not used in distilling spirits from domestic materials, but in rectifying the said spirits after they had been distilled from domestic materials; that he is not a distiller, but a rectifier of spirits. He contended that distillation and rectification of spirits are distinct vocations; that rectifying such spirits is not a part of the process of distillation, but a mere purification of the spirits themselves from feculent or useless matter; and that he was not liable to the penalty of the act of congress. The attorney for the United States contended, that rectification of spirits in a distillery is nothing more than distillation repeated, and in this repetition the spirits must be deemed, and in fact are, domestic materials.
 The court charged the jury that the act of congress, laying duties on licenses to distillers of spirituous liquors, did not apply unless when the still is used for the purpose of distilling spirits from domestic or foreign materials; and that if the still, or other implement, be not employed in distilling spirits from domestic or foreign materials, there can be no penalty incurred for using a still for any other purpose, although no license be taken out; and that spirits cannot be considered as a domestic material. That penal laws must be construed strictly, and must not be amplified by intendment. That whether rectification be part of the process of distillation, was a fact to be left to the jury. The counsel for the United States excepted to this charge. There was a verdict and judgment for the defendant.
 The cause was removed by writ of error to the circuit court, when the judgment of the district court was affirmed with costs.
 It was brought before this court by writ of error, and submitted on the observations of the Attorney-General.
 March 1st.
 The Attorney-General now contended, for the United States, that the district judge ought not to have permitted witnesses to be examined. It was no case for the application of the maxim, quilibet in sua arte credendum est. If the witnesses knew nothing of the subject, their testimony could not enlighten others. If they did, it was plain that their knowledge was derived from being engaged in the same line of business, which gave them an interest in the construction of the law. In the case of the Cast-Plate Glass Company,a Chief Baron Eyre declares that, in explaining an act of parliament, no evidence should be admitted; for that would be to make it a question of fact, in place of a question of law. The judge alone must direct the jury on the point of law. In doing this, he must form his judgment of the meaning of the legislature, in the same manner as if the case had come before him by demurrer, where no evidence can be allowed. On demurrer, a judge may well inform himself, from dictionaries or books, on the particular subject concerning the meaning of any word. Yet, if he does so at
 
 
 a
 Anstr. 40. Nisi Prius, and shows them to the jury, they are not to be considered as evidence, but only as the grounds on which he has formed his opinion, in the same manner as if he were to cite authorities for the point of law he lays down. The single question, in the present case, was, whether a person, using a still for the purpose of rectifying spirits, is within its true meaning. It is necessary to remark, that the duty under this act, was not upon the quantity of liquor distilled, nor upon its removal. This, indeed, had been the case with some parts, and at other times, with this part of our excise system. But under the present act, the duty was upon the implement, or still itself. To speak the language of the debates, it was upon the capacity, not the gallon; a distinction materially relevant to a right understanding of the point in controversy. By the first section of the act, a license is required to be taken out for all stills used for the purpose of distilling spirituous liquors. No exception is made as to any particular kind of still. The term, spirituous liquors, is so comprehensive, that it must necessarily include all liquors that contain spirits, without any reference to the proportion or quantity which they may contain. By the second section, a certain amount of duty is laid on stills employed in distilling spirits from domestic materials, and a different amount on those that work on foreign materials. It is evident, that no intention existed to define what was meant by materials, but barely to discriminate between foreign and domestic, with a view to make the duty lighter on spirits produced from the latter than on the former, according to the common policy of our legislation. Two points will be made for the United States. 1. That spirits are the materials upon which rectification operates. 2. That rectification is a branch of the process of distilling. The first point is so plain, that the defendant himself must admit it. The second alone opens a door to argument. The question lies out of the ordinary track of legal discussion. To understand it, we must have recourse to books of art. It is these which will best fix the true meaning of the terms distillation and rectification. We shall then be enabled to determine, if there be any, the difference between them. Doctor Black, in his elements of chemistry, after speaking of fermentation, says, 'The spirit is separated more or less perfectly from these substances by distillation, it being more volatile than most of them, especially the acid, mucilaginous and colouring matter. The water is but imperfectly separated at first, on account of the small difference of volatility between it and the spirit. To reduce the spirit to a state of purity, we must perform several other operations, such as distilling it again once or twice with a gentle heat, which is called rectifying. By this we separate the greater part of the water which had come over in the first distillation.'b Fourcroy, in his elements,c defines rectification to be, 'a second distillation, in which substances are purified, by their most volatile parts being raised by heat carefully managed. The
 
 
 b
 Black's Chemistry, vol. 3. p. 24.
 
 
 c
 Vol. 1. p. 176. Attorney-General next referred to Hall's distiller, (which, he said, was agreed to be a very accurate work upon this subject,) and to the Encyclopaedia, where the definitions were substantially the same as in Black and Fourcroy. Even the common dictionaries of the language, he said, defined rectification to be the act of 'improving by repeated distillations.' The point appearing to stand thus upon the score of authority, it was next to be inquired how it stood upon that of reason. The duty, as the law so plainly makes known, is laid, in the broadest manner, upon all stills used for distilling spirituous liquors. It is neither graduated by the strength of the spirits produced, nor by the simplicity or complexity of the manufacture. The first process in distillation is understood to be, that in which the wash is put into the still. From this low wines are drawn, or spirits of an inferior quality. From a case in Anstruther, 558., it would seem that in England, the first duty attaches on the wash before distillation. For a still employed in the first process, it was on all hands admitted, that a license must be taken out. The inferior spirits so drawn do not constitute marketable spirits. A second process is then used. This consists, for the most part, in putting them into a smaller still called a doubler. From the doubler they come out, having the quality of common marketable spirits. A license ought surely to be taken out for a still so employed, call it a doubler or by any other name. But the original matter, of material, is here clearly out of view, for it went into the first still. Nothing but the spirits extracted from it were carried over to the doubler. Does not this then establish the point, that inferior spirits may become domestic materials under the act? It cannot, with any show of reason, be pretended that they have lost the properties of matter merely by being separated from substances with which they were primarily combined. Between the derivatives of matter and materials, it would be strange indeed to attempt any distinction, as applicable to the case under consideration. The spirits extracted by the doubler are understood to be generally about proof. For various purposes it is necessary to increase their strength. This is effected by a third or fourth distillation generally, though not necessarily, in the same stills. By this process, not only is the strength raised, but the purity is increased. Now, in what, may it be asked, does this operation differ from the second process in the doubler? Spirits of an inferior strength are the materials of distillation in the one case and in the other. The last, and any similar subsequent operations, may be called rectifications. But they are distillations too. They impart to the spirits more strength as well as more purity. It is just so with the second process in the doubler. It may, perhaps, be said, that these subsequent processes are all carried on by the rectifier, on spirits previously distilled. That it is done merely to fit them for combination with other materials of which mixtures are made by persons not distillers, and that in such process extraneous matter is often introduced with a view to greater purity. To this it may be answered, first, that these processes in nowise destroy the character of distillation, as they do not necessarily prevent an augmentation in the strength of spirits. And, secondly, that the introduction of extraneous matter is not confined to the higher process of distillation, as water, charcoal, and other ingredients, are not unfrequently used in the process by which low wines are converted into proof spirits. Suppose a patent to be taken out for carrying on the original process as well as rectification in the same still? how can the duty be made to attach even in the case of the doubler, except on the hypothesis assumed for the United States. It would be difficult, if not impracticable, to fall upon any other mode. Again; the duty on stills is properly considered as a commutation for that which might have been laid upon the liquor. Is it not, therefore, as just that the duty should be paid upon the still when used to produce rectified spirits, as when it is used to produce any other kind of spirits? The English statutes in pari materia will be found to countenance the doctrine contended for on the part of the United States; particularly that of 2. Geo. III. ch. 5. from the 12th section of which it appears, that the rectifier who distils spirits and the common distiller, are considered the same. Several of the other sections would also show that rectification and distillation, when an increase of strength was the object, were used as equivalent terms. The system, in England, contemplated the laying of a duty first on the low wines, and then on the spirits distilled from them. So congress, with like equity, may have intended to impose a duty first upon the still when used in the original manufacture of spirits, and again on its use in the manufacture of spirits of a higher proof. So far is such a principle from being at all repugnant to the general theory of American taxation, that it is sanctioned by the whole analogy of our impost revenue. Thus under the present tariff, iron in bars, iron in sheets, and iron in bolts, is each charged with a different duty. Leather in different forms, as in boots, saddles, caps, slippers, pays differently. The duty levied upon imported spirits is graduated according to the degree of proof. Brown sugars, white sugars, lump sugars, powdered sugars, are all subject to different rates. Tobacco, under its different forms of manufacture, is chargeable with different duties, and the list might easily, if it were necessary, be extended. Other nations have refined somewhat more upon the principle. Mr. Brougham, in his Colonial Policy, mentions, that there was once a particular sauce for fish used in Holland which was made to pay no less than thirty different duties of excise! a provident decree against the luxury of the palate, among a people as renowned for frugality as riches. Yet it may be that this sauce was a less noxious superfluity than the liquor of the still. Revenue laws are to be construed and applied with great exactness. They are framed for the security of great national interests, and the effect of such laws, founded on considerations of public policy, is not to be weakened by a minute tenderness to hardships, real or supposed, in particular instances. It is also a good rule, where doubts exist in a revenue case, to lean in favour of the revenue.d
 
 
 Mr. Justice DUVALL delivered the opinion of the court, and after stating the facts, proceeded as follows:
 
 
 1
 The court, in considering this question, must be governed by the language of the act of congress of the 4th July, 1813. By this act, a specific duty is laid or licenses to stills, employed in distilling spirituous liquors from domestic or foreign materials, and a penalty is inflicted for distilling without a license.
 
 
 2
 The distillation of spirituous liquors is performed by a double process: by the application of heat to a still containing the material. The product of the first process, after running through the still, is commonly called low wines, or singlings; the low wines undergo a second process of distillation, by which spirits are produced: they are to be proof of the first, second, third, or fourth degree, as defined and required by law. These are marketable; and here the process ends. The material from which the spirits are extracted, appears to be the object of the law. The rectification or purification of spirits, after their distillation has been complete, in order to fit them for certain purposes of combination with other materials, is no part of the process of distillation, and is not a breach of the provisions of the act of congress. The distillation of spirits, and the rectification of them after they are distilled, appear to be distinct and separate acts. No duty is specifically
 
 
 
 d
 The Betty Cathcart, 1. Rob. 220. 1. Bl. Com. 324. (Christian's edit.) laid by law on the rectification of spirits, nor does it appear that any was contemplated; and, if the process is confined to the rectification of spirits already distilled, no penalty is incurred, although a license is not previously obtained. It was evidently the intention of the legislature to exact one duty only on the distillation of spirits.
 
 
 
 3
 It is the opinion of this court, that there is no error in the judgment of the circuit court.
 
 
 4
 This opinion is given on the request of the Attorney-General; it being probable that the same question may frequently occur. But, as this cause is improperly brought before this court by writ of error, having been first carried from the district to the circuit court by the same process, it is dismissed.e
 
 
 5
 Writ of error dismissed.
 
 
 
 e
 Vide 7 Cranch, 108. The United States v. Goodwin. Ib. 287. The United States v. Gordon et al.; in which cases it was determined, that a writ of error does not lie to carry to the supreme court a civil cause which has been carried from the district court by writ of error.