[Civil No. 3368.  Filed July 9, 1934.]

[34 Pac. (2d) 420.]

TOVREA PACKING COMPANY, a Corporation, Appellant, v. THE LIVESTOCK SANITARY BOARD OF ARIZONA, JOHN D. PARKS, DAN C. McKINNEY, LOY TURBEVILLE, as Members of Said Board, and CHARLES T. FRANCIS, as Secretary of Said Board, Appellees.

Messrs. Ellinwood & Ross, Mr. William H. Mackay and Mr. Joseph S. Jenckes, Jr., for Appellant.

Mr. Arthur T. La Prade, Attorney General, and Mr. J. R. McDougall, Assistant Attorney General, for Appellees.

LOCKWOOD, J.—This is an appeal by Tovrea Packing Company, a corporation, hereinafter called plaintiff, from a judgment rendered in an action brought by it against the livestock sanitary board of Arizona and its members, hereinafter called defendants, to recover certain sums paid by it to defendant board under protest.

For many years the livestock industry has been one of the largest and most important in Arizona, and the legislature as a consequence has passed many acts regulating the manner in which it should be carried on. In the Revised Code of 1928, chapter 48, containing some eighty-five sections (section 2076 et seq.), is devoted to regulation of this industry. It was greatly amended by chapter 43, Session Laws of 1931. Section 2145, as amended by Laws of 1931,

chapter 43, section 27, provides that it shall be unlawful for any person to slaughter any neat animals, sheep or goats unless duly licensed according to the terms of the chapter. Section 2146, as amended by Laws of 1931, chapter 43, section 28, prohibits the selling of meat of any domestic animal unless it is both inspected and marked in the manner provided in the section, but excepts certain meat from being marked as inspected, at the option of the owner.

Plaintiff is engaged in the business of slaughtering and packing livestock of all descriptions, and in furtherance of such business has invested over $1,000,000 in a large and complete plant suitable for such purposes. It is engaged in both intrastate and interstate commerce with its products, and as a result all meat slaughtered at its plant is inspected by agents of the federal government under the provisions of chapter 4, title 21, U. S. C. A. (section 71 et seq.).

Since all of the meat sold by it came under one of the exceptions of the section, plaintiff elected that its meat should not be marked by state inspectors, and gave notice of such fact to the livestock sanitary board. Thereafter none of plaintiff's meat has been marked, nor has any of such meat or carcass been inspected after slaughter, by any state inspector, though all animals slaughtered by it have been inspected by the state inspectors for brands and marks as provided by section 2146 at all times, and the hides properly marked. Plaintiff has always willingly paid the 10-cent fee provided by section 2146, *supra,* for hide inspection and marking, but refused to pay the 20-cent fee provided in said section to be paid for the stamping of the meat. Upon such refusal to pay, the livestock sanitary board threatened to revoke plaintiff's license, which under the law would have forced it to suspend its business, break many of its contracts, and liquidate its plants and assets at a

great loss. Rather than to do this plaintiff paid the 20-cent fee on some 46,113 carcasses under protest, and brought suit to recover such amount. Defendants demurred to plaintiff's complaint, and, the demurrer being by the trial court sustained and plaintiff standing upon the complaint, judgment was entered for defendants. From said judgment this appeal was taken.

It is the contention of plaintiff that the attempt to collect the license fee of 20 cents per carcass under the circumstances above set forth is a violation of its constitutional rights, particularly of those guaranteed by article 9, section 1, and article 2, section 13, of the State Constitution, and article 1, section 8, and the Fourteenth Amendment to the Federal Constitution. In support of its contention it sets up three propositions: (a) Exaction of the fee in question cannot be sustained as a valid exercise of the police power; (b) it cannot be justified under the guise of a property tax; and (c) it cannot be justified under the guise of an excise tax.

Defendants state in their brief that they will not answer these contentions made by plaintiff for the reason that, regardless of whether the fee in question can under the circumstances be sustained as valid for any reason whatever, plaintiff is estopped from denying its validity because it has elected voluntarily to exercise a privilege granted by the law, conditional upon the payment of such fee.

The whole question involved depends upon the interpretation and validity of section 2146, *supra*. This section, as amended, reads as follows:

"Sec. 2146. *Sale or Possession of Unstamped Meat Prohibited; Penalty; Inspectors may Search without Warrant.* It shall be unlawful for any person to have in his possession, or to sell, offer for sale, give or exchange the meat of any neat animal, horse,

mule or ass unless the whole hide of such animal has been inspected for marks and brands and the meat thereof stamped as hereinafter provided. The hide of such animal shall be marked, as provided by the board, so that it may be identified, for which the inspector shall collect ten cents for each hide so inspected. For the stamping of the whole carcass, or any part thereof, the inspector shall collect twenty cents, and shall thereupon stamp upon the hind quarter, side, shoulder, neck and shank of both sides the words 'brand inspected.' Such stamping shall be done with a stamp adopted and furnished by the board. A violation of this section shall constitute a misdemeanor and shall be punishable by a fine of not less than fifty nor more than three hundred dollars, or by imprisonment in the county jail not less than thirty nor more than one hundred eighty days, or by both such fine and imprisonment; provided, that nothing in this section shall be construed to apply to producers who are slaughtering such animals for their own consumption; *and provided, that meat bearing a federal meat inspection stamp may, at the option of the possessor, not be stamped as herein provided, but upon the exercise of such option, such possessor shall pay the stamping fee.* Inspectors are hereby authorized to stop and search, without warrant, any vehicle which such inspector suspects contains unstamped meat and, if any be found, it shall be taken by the inspector and, unless proof be submitted within twelve hours satisfying the inspector that the person from whom the meat was taken is the lawful owner thereof, such meat shall be forfeited to the state and sold or destroyed by the inspector.'' (Italics ours.)

The livestock industry, and particularly that portion of it devoted to the slaughtering of meat for sale, is a fit and proper subject for reasonable regulation, and statutes for that purpose are almost invariably sustained as a valid exercise of the police power, provided they tend to protect the public interest in some manner. *Territory* v. *Kenney,* 11 Ariz.

353, 95 Pac. 93; *Jungst* v. *Baldridge,* (D. C.) 51 Fed. (2d) 379; *City of Dayton* v. *Jacobs,* 120 Ohio St. 225, 165 N. E. 844; *Burtis* v. *Montrose,* 79 Colo. 475, 247 Pac. 186.

Upon examining the Live Stock Sanitary Code, it will be noted that a considerable portion thereof is devoted to methods of insuring that livestock shall be so handled as to protect the owners thereof from theft. The legislature has provided that such animals shall be properly branded or marked, and for inspection being had of the hides and meat of animals offered for sale, in order to determine that they are not stolen. Such legislation, if reasonable, is obviously a valid exercise of the police power.

It is clear upon an examination of chapter 48, *supra,* and particularly of section 2146, *supra,* that the purpose of the inspection set forth in the last-named section is solely the protection of property rights, and not the determining that meat sold will be fit for human consumption. In order to insure this, the hide of the animal whose meat is offered for sale must be inspected by a state inspector. After such inspection, the hide must be marked, and the meat of the animal must be stamped with the words "brand inspected" in ten different places on the carcass. The purpose of the marking of the hide and the stamping of the meat is undoubtedly to furnish evidence that the animal to which they belong has been properly inspected for *indicia* of ownership and that the inspector has determined it had legally passed into the possession of the individual or institution offering its meat for sale. The inspection is the vital portion of the duty of the inspector. The stamping is merely evidence that such duty was performed. The statute provides that for the labor involved in marking the hide a fee of 10 cents should

be collected, and for the labor in stamping the meat 20 cents. It is the general rule that a reasonable fee may be imposed for the carrying out of any statute passed under the police power, provided the amount is such that it is obvious it was not imposed for the purpose of revenue but for paying the expenses of enforcing the law. *Smith* v. *Mahoney,* 22 Ariz. 342, 197 Pac. 704; *Territory* v. *Kenney, supra.* And there is no contention that the fee fixed by section 2146 was exorbitant for the labor required to be done by the inspector. Had there been no exception to the rule requiring the marking and stamping as aforesaid and the payment of the fee fixed therefor, there can be no doubt that the statute in all its parts would be constitutional, and plaintiff must either comply with its terms or go out of business.

The statute, however, contains the following proviso:

" . . . Provided, that meat bearing a federal meat inspection stamp may, at the option of the possessor, not be stamped as herein provided, but upon the exercise of such option, such possessor shall pay the stamping fee . . . "

—and it is urged that, since plaintiff has exercised the option contained in this proviso of not allowing its meat to be stamped by the state inspector, the exaction of the 20-cent fee is compelling it to pay for something which is not done, and that such exaction is not a justifiable exercise of either the police or the taxing power of the state under the constitutional provisions above referred to.

Assuming, without admitting, that the condition annexed to the proviso above set forth to the effect that plaintiff must pay the 20-cent fee for carcasses which it has elected under the act not to have stamped is invalid for the reasons above given, is plaintiff in a position to complain thereof? It is the

general rule of law that, when parties have sought or derived benefit by exercising a privilege bestowed upon them by law, they will be estopped from denying the validity of terms fixed as a condition for the exercise of such privilege. *Elec. Co.* v. *Dow,* 166 U. S. 489, 17 Sup. Ct. 645, 41 L. Ed. 1088; *St. Louis Malleable Cast. Co.* v. *Prendergast Const. Co.,* 260 U. S. 469, 43 Sup. Ct. 178, 67 L. Ed. 351; *Santa Cruz County* v. *McKnight,* 20 Ariz. 103, 177 Pac. 256; 12 C. J. 769, § 190. Indeed plaintiff admits the general proposition above set forth, but contends that it is only applicable when the privilege exercised is a special one which, as a matter of general or natural right, it was not entitled to receive. We think the limitation of the rule, as contended for by plaintiff, is a correct one, but that its application thereof is not borne out by the facts of the case. What was the privilege of which plaintiff availed itself? It was the right to have its meat exempted from clearly constitutional requirements imposed by a valid general statute. Such exemption was not a matter of natural right, but a special privilege granted by the legislature.

Apparently the reasoning of the legislature in adopting the statute and its exception ran as follows:

"It is necessary that all animals slaughtered for sale shall be inspected for the purpose of determining their ownership. It is also necessary that there should be some evidence whereby a purchaser may determine whether such inspection has been had. We will provide that the evidence of the inspection shall be certain marks placed on the hide and meat of the animals to be sold. This is the general rule. There are, however, certain cases when evidence other than that required by the statute may be sufficient to establish the fact of the inspection. We will allow parties possessing this other evidence, and who do not wish to have their meat disfigured by being

stamped by the state inspector, to use it instead of that required by the general rule, upon condition they pay the twenty cent fee.''

We are of the opinion that the privilege of exemption from furnishing the general evidence of inspection required by the statute is a special one, and not one of general or natural right, and plaintiff, having elected to exercise that privilege, may not now be heard to say that the condition annexed thereto is invalid.

Had the law provided that persons situated like plaintiff had no option as to the exercise of this special privilege, but must accept it, the situation would be very different, but it had the choice of either using the general law or the exception thereto, and, having chosen the latter, cannot now complain.

The judgment of the superior court of Maricopa county is affirmed.

McALISTER, J., concurs.

ROSS, C. J., Dissenting.—The charge for stamping the meat by the state inspector can be justified only on the ground that it is necessary to protect the livestock industry and as a police regulation. The statute gives the inspection and stamping of the carcass by a federal inspector the force and effect of an inspection and stamping by a state inspector. In other words, the law itself admits that there is no occasion or necessity to have the carcass inspected and stamped by the state when this has been done by a federal agent. The stamping fee demanded by the state in such circumstances is a mere gratuity or forced contribution for which no services are rendered. Such a tax is not justified under the police power and of course it is not a property tax or an excise tax. For these reasons I cannot concur in the majority opinion.