[Civ. No. 2790. Fourth Dist. Oct. 10, 1941.]

G. C. HIGBIE, Appellant, v. COUNTY OF LOS ANGELES, Respondent.

John Moore Robinson and Walter R. Powers for Appellant.

J. H. O'Connor, County Counsel, and A. Curtis Smith, Deputy County Counsel, for Respondent.

MARKS, J.—Plaintiff brought this action on May 9, 1939, to recover a portion of the money paid by him to the defendant under the system of redemption of property from sale for delinquent taxes and assessments under what is known as the "Ten Payment Account." (See secs. 3817c, 3817c2, 3817c3, 3817c4, 3817c5, Political Code.) A demurrer to the complaint was sustained with leave to amend. Plaintiff declined to amend and a judgment was entered against him from which this appeal was taken.

Plaintiff was the owner of property in the city of Inglewood, in the county of Los Angeles, upon which the money sought to be recovered was paid under the Ten Payment Account. The property was within Acquisition Improvement District Number 3 of the city of Inglewood, formed under the Acquisition and Improvement Act of 1925 (Stats. 1925, p. 849, Deering's Gen. Laws, 1931, Act 3276a) as amended and was assessed to pay the bonds issued to pay the cost of the improvement.

Plaintiff regularly paid all taxes and assessments on his property for the fiscal years material here except for the

fiscal year 1932–1933, which were permitted to go delinquent. Because of this delinquency his property was sold on September 2, 1933.

In April, 1934, plaintiff elected to avail himself of the Ten Payment Account act and declared his intention to avail himself of that law and to redeem his property under its provisions. He then paid the first instalment under the redemption plan which was accepted and his conditional delinquent tax account was given number 14030. He regularly made his payments to and including the payment made on April 26, 1938. These payments totaled $469.

The total delinquency for the fiscal year 1932–1933 was $634.72, without penalties, costs and interest, which included the delinquent local assessment and a $224.02 property tax.

In April, 1938, the city of Inglewood instituted proceedings under the Assessment Bond Refunding Act of 1933 (Stats. 1933, p. 1915, as amended; Stats. 1935, p. 1999; Stats. 1937, p. 2370; Extra Session, Stats. 1938, p. 92, Deering's Gen. Laws, Act 877) to refund the bonds issued for Acquisition Improvement District Number Three. These proceedings were concluded and the bonds were refunded. The reassessment on plaintiff's property was credited with all payments regularly made by him on the original assessment and the reassessment was reduced by the total of those amounts. He was not given credit for those payments he had made to the county of Los Angeles under the Ten Payment Account which represented instalments on the delinquent local assessment.

While it is outside of the record it is admitted that the bondholders under the original assessment remitted over $25,000 of the amount due them and the county of Los Angeles contributed $30,925.55 in the refunding proceedings, which amounts, with the refunding bonds retired the original bonds and plaintiff's property was released from the lien created in the original proceeding. This left the $469 which plaintiff had paid under the Ten Payment Account act still in the possession of defendant according to the allegations of the complaint, the truth of which was admitted by the demurrer. It used $224.02 of that money with which to pay the delinquent property tax leaving a balance of $244.98 still in its possession.

Plaintiff filed his verified claim for a refund of this sum in which he set forth the ground on which he claimed a refund as follows: "Refund of taxes paid by claimant, account cancellation of special assessment district, constituting excess of payment by amount herein claimed, over all taxes and assessments owed by claimant." The claim was rejected and this action followed.

It is interesting to note that counsel for defendant frankly states that the money was not repaid to plaintiff not "because of any lack of desire on the part of the county to make these refunds, but because the county could not find legal authority to do so." It is also pointed out that the county has conducted its own refunding proceedings so that there were no overages of property owners' money remaining in the county treasury such as we have here, but that this refunding proceeding was conducted by the city of Inglewood and that the county of Los Angeles had no control over it.

Before proceeding to a consideration of the questions argued by plaintiff we should point out that the complaint is barren of any attack on the refunding proceedings and it is not alleged that plaintiff ever protested at any stage of those proceedings. (See section 3, Assessment Bond Refunding Act of 1933.) It is not alleged that there was any fraud in the refunding proceedings or that any legal attack was made upon them within the ninety days after the confirmation of the reassessment specified in section 30 of the act within which time suit may be brought to contest the refunding proceedings. We must assume that no attack can be made on those proceedings at this time.

If plaintiff ever had any right to protest the reassessment of his property in the refunding proceedings because the money which he had paid under the Ten Payment Account representing part of the original assessment on his property was not credited on the reassessment in the refunding proceedings, he lost that right by failing to protest or contest in the manner and within the time allowed by the act.

Section 3817c of the Political Code establishing the Ten Payment Account and subsequent sections dealing with the same subject (with the exception of different dates) contains the following:

"No such payment, nor all of them, shall be deemed a redemption of real estate nor affect the right, title, or interest

of the State thereto, but shall be deemed and considered as compensation for the use and occupancy of said real estate; provided, that if each installment of delinquent taxes and interest be paid on or before the respective dates specified in this section, and if redemption of such property shall be made, on or before the twentieth of April, 1943, in the manner hereinafter in this section provided, the amounts previously paid under the authority of this section shall be credited on the amount to be paid for such redemption.''

Section 3817h of the Political Code, passed at the special session of the legislature in 1934 (Stats. 1935, p. 18) directed that money collected under the Ten Payment Plan be disbursed on receipt in accordance with the provisions of section 3816 of the Political Code, that is to pay the costs of sale, etc., and the balance (generally speaking) to the funds and other taxing agencies entitled to it. This section was amended in 1935 (Stats. 1935, p. 1066) and this provision was retained. The section was again amended in 1936 (Stats. 1937, p. 21) and this provision was again retained. It was amended in 1937 (Stats. 1937, p. 149, effective April 19, 1937) to provide that the instalments collected ''may be held until redemption is completed, or may be distributed as the money is received.''

While there is a presumption, in the absence of anything to the contrary, that the county officials performed their duty in accordance with the law, which would support the conclusion that plaintiff's payments when made, were disbursed to the various funds and taxing agencies entitled to receive them at least up to April 19, 1937, and while counsel for defendant states, and it is not denied, that all of plaintiff's payments were so disbursed, still we have the allegations of the complaint that defendant still retains this money.

Section 15 of the Assessment Bond Refunding Act of 1933 was amended in 1938 (Extra Session, Stats. 1938, p. 92), by the addition, among other things, of the following paragraph:

''In any case in which a property owner has elected to pay delinquent taxes and assessments under the provisions of the law commonly known as the ten payment plan, but has not thereby redeemed the property prior to the filing of the reassessment in the refunding proceeding, the amount paid under the ten payment plan, which has been placed in the interest and sinking fund of the district, may be credited as

assessment paid in making the reassessment and only the unpaid balance of the *ad valorem* assessment canceled upon recordation of the reassessment, or, as an alternative, the amount paid into the interest and sinking fund under the ten payment plan may be considered as not paid upon the assessment and shall not be deducted in making the reassessment, but in that event, upon recordation of the reassessment in the refunding proceeding, the unpaid assessments shall be canceled in the usual manner and the moneys paid into the interest and sinking fund from such payments made under the ten payment plan shall be applied to and credited upon the redemption of the property from general taxes and other assessments, if any.''

This amendment went into effect on March 30, 1938, and was in effect during the process of the refunding proceedings before us.

 The statutes to which we have referred clearly indicate the following:

(1) That the property owner availing himself of the Ten Payment Account and making payments under it should be regarded as paying something in the nature of a rental for continued possession of his property until all instalments had been paid when the rental would be used to pay the delinquent taxes and assessments. This provision may have been put in the statute to obviate the possibility of a claim for a refund by a property owner who paid part but not all of his instalments under the Ten Payment Account and consequently lost his property.

(2) That the instalments paid under the Ten Payment Account could be used annually by the various taxing agencies entitled to receive them.

(3) That in refunding proceedings instituted after March 30, 1938, with which we are concerned here, the agency conducting the refunding proceedings could give credit in the reassessment to the property owner who had made payments under the Ten Payment Account but had not redeemed his property, for that portion of those payments representing payments on the assessments being refunded, or might apply those credits on the redemption of the taxpayers' property from the lien of general taxes or other assessments, if any there be, provided those payments have reached the treasury of the agency conducting the refunding proceedings.

These provisions of the law would seem to cover the ordinary proceeding in which the same agency collected the instalments under the Ten Payment Account and conducted the refunding proceedings. The controversy we have here arises from the fact that the instalments under the Ten Payment Account were collected by one agency and the refunding proceedings were conducted by another, and the further fact that the two agencies did not cooperate and coordinate their actions so that there would be no overage of the taxpayers' money remaining after payment of all delinquent taxes and assessments. As far as we can see each agency acted within the strict letter of the law which applied to it, acting in its separate capacity, under the peculiar facts of this case. We must, therefore, look to the general principles of the law to determine the rights of plaintiff to recover the overage remaining in the possession of defendant.. There seems to be no judicial determination of this question under the statutes applicable here and the facts presented.

It is the settled law in California that taxes voluntarily paid cannot be recovered by the taxpayer in the absence of a statute permitting a refund. (*Southern Service Co., Ltd.,* v. *Los Angeles,* 15 Cal. (2d) 1 [97 Pac. (2d) 963].)

We are cited to no statute permitting a refund to plaintiff under the facts of this case. Certainly section 3804 of the Political Code is not such a statute. While it permits refunds in certain cases, none of its provisions is applicable to the facts here. There is no allegation that the assessments were paid more than once, nor is it claimed that any other of the provisions are applicable except the one relating to taxes erroneously or illegally collected.

It should be apparent from what we have already said that the assessments were neither erroneously nor illegally collected by the county of Los Angeles from plaintiff. He was in default in his taxes. He voluntarily availed himself of the Ten Payment Account plan and chose to redeem his property and pay the delinquent taxes which he owed under its provisions. He does not claim any error in computation in the amounts he was required to pay under that plan. There was no irregularity of any kind in his dealings with the county of Los Angeles. The only inequity in the transactions was occasioned not by anything done by the county of Los Angeles but in the refunding proceedings conducted

by the city of Inglewood. As the county of Los Angeles had no control over those proceedings it cannot be held responsible for the action of that city.

In order to bring himself without the voluntary payment of tax rule and within the provisions of section 3804 of the Political Code providing for the refund of taxes erroneously or illegally collected, he urges that the sections of the Political Code setting up the Ten Payment Account plan and certain provisions of the Assessment Bond Refunding Act of 1933 are unconstitutional and void.

A sufficient answer to this argument should be that ''one who receives the benefit from an unconstitutional law is estopped from asserting its unconstitutionality.'' (*Hershey* v. *Reclamation Dist. No. 108,* 200 Cal. 550 [254 Pac. 542], at 564.) As the questions are of considerable importance, we will not rest on this well-established rule, but will consider the several arguments of plaintiff on this phase of the case.

He argues that sections 3817c et seq., of the Political Code are void because the legislation is special and places a greater burden on one class of taxpayers than on another.

Redemption penalties are different in character from delinquency penalties and redemption penalties may be less than delinquency penalties. (*Long Beach City School Dist.* v. *Payne,* 219 Cal. 598 [28 Pac. (2d) 663]; *San Diego Inv. Co.* v. *Shaffer,* 137 Cal. 323 [70 Pac. 179].)

It is universally held in California that a law is general if it has a uniform operation and affords equal protection in its operation to all persons coming within the class which it purports to affect provided the designation of such class is founded on some reasonable, natural or intrinsic classification between the persons composing it and others not embraced within it; that ''the legislative determination as to what is a sufficient distinction to warrant a classification will not be overthrown unless it is palpably arbitrary.'' (*In re Weisberg,* 215 Cal. 624 [12 Pac. (2d) 446].) See, also, *In re Sumida,* 177 Cal. 388 [170 Pac. 823]; *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686 [151 Pac. 398]; *Coelho* v. *Truckell,* 9 Cal. App. (2d) 47 [48 Pac. (2d) 697].)

Here the challenged legislation is for the relief of a certain class of taxpayers, namely those who are in default

in their taxes and in a period of extended financial depression are in danger of losing their property. We believe this a reasonable ground for classification and cannot hold the legislative decision in making such a classification arbitrary and therefore void.

Plaintiff argues that certain parts of the legislation are void because they impaired the obligation of the contract of the bondholders. This argument is without merit. The Ten Payment Account plan was clearly intended to provide funds for the payment of the bonds and not to defeat their payment. If this argument be directed to the refunding proceedings it is also without merit. That proceeding resulted in the substitution of a new contract with the bondholders for the original contract. This substitution was made with the express consent of a majority of the bondholders and the payment in full of those not consenting. The property owners either by expressly consenting to the refunding proceedings or by failing to protest, ratified the new contract and consented to it under the express terms of the refunding act. The obligation of a contract is not impaired where a new contract is substituted for a prior one with the consent of the contracting parties.

The following cases tend to support our conclusion that the acts in question are constitutional: *City of Inglewood* v. *County of Los Angeles,* 207 Cal. 697 [280 Pac. 360]; *Anglo California Nat. Bank* v. *Leland,* 9 Cal. (2d) 347 [70 Pac. (2d) 937]; *County of Los Angeles* v. *Jones,* 6 Cal. (2d) 695 [59 Pac. (2d) 489]; *County of San Diego* v. *Hammond,* 6 Cal. (2d) 709 [59 Pac. (2d) 478, 105 A. L. R. 1155]; *County of Los Angeles* v. *Jones,* 13 Cal. (2d) 554 [90 Pac. (2d) 802].

In the case of *County of San Bernardino* v. *Way,* 18 Cal. (2d) 647 [117 Pac. (2d) 354], very similar attacks to those made here were made on the constitutionality of the Assessment Refunding Bond Act of 1935, as amended (Stats. 1939, p. 1637). The arguments there made, similar to those made here, were held to be without merit, and the act was held constitutional.

Plaintiff urges that as the consideration for the money held by the county of Los Angeles failed, the county holds that money in trust for him so that he can recover it under the rules of the common law without a statute permitting a

refund. He relies on such cases as *Grimes* v. *Merced County,* 96 Cal. App. 76 [273 Pac. 839], to support his argument.

In the Grimes case a water protection district was formed and $7,588 was collected from the property owners to pay the cost of the proposed improvement. The project was abandoned as the money provided was entirely inadequate to pay the cost of the improvement. Mrs. Grimes failed to pay her assessment and her property was sold. She redeemed it at a cost of $684.73 and recovered judgment for that amount, the appellate court holding that as the consideration for the payment had failed, a trust arose in her favor.

Here no such situation is apparent. The express statutory consideration for the payments made by plaintiff to the county of Los Angeles was "to extend the period of redemption of such real estate and to postpone the date of sale of such property at auction" and "as compensation for the use and occupancy of said real estate" (sec. 3817c, Political Code) by the plaintiff. Plaintiff received those considerations from the county of Los Angeles, so the consideration for the payments did not fail. Because another governmental agency in another proceeding over which the county of Los Angeles had no control provided means for the redemption of his property and failed to give plaintiff the credits on his reassessment which he now thinks he should have received cannot affect the validity of the consideration for his contract under the Ten Payment Account with the county of Los Angeles.

As the contract between plaintiff and defendant was lawful and valid, as the payments made by plaintiff to defendant were not erroneously or illegally collected by it, as the payments made under that contract were voluntary, for a lawful purpose, and made upon a valid consideration which did not fail, the trust theory in *Grimes* v. *Merced County, supra,* cannot be invoked here.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.