[Civ. No. 7203. Third Dist. July 19, 1946.]

COUNTY OF SACRAMENTO, Appellant, v. CITY OF SACRAMENTO, Respondent.

John Quincy Brown, District Attorney, William A. Green, Assistant District Attorney, and John B. Heinrich, Deputy District Attorney, for Appellant.

Richard J. Lawrence, City Attorney, for Respondent.

THE COURT.—Article VI of section 11 of the Constitution of the State of California, adopted in the year 1924, provides for the establishment of municipal courts. Subsequent to the adoption of said constitutional provision, chapter 358 of the Statutes of 1925 (2 Deering's Gen. Laws, Act 5238), was enacted, which set forth the procedure for establishing such courts. Prior to the first day of July, 1942, a municipal court

was established in the city of Sacramento, then a city of the second and three-eighths class, which became effective as of the first day of July of that year.

Section 11c of the Municipal Court Act, as same read at the time the city elected to adopt the municipal court system, and during the fiscal year July 1, 1942-July 1, 1943, provided:

"Whenever a municipal court is established in a city of the second and three-eighths class, the salaries of the judges, clerk, marshal, *and other attachés,* and the cost of all supplies, books, furniture and suitable quarters, except as hereinafter otherwise provided in this section, for carrying out their duties, including supplies and equipment for the preparation and maintenance of duplicate records of the court, or a division thereof when sessions are held at more than one place within the city wherein the court is established, shall be paid by the county in which the court is situated out of the municipal court fund, or, if there be no such fund, out of the county general fund. However, if *such* charges upon the county *for maintaining the municipal court* exceed the sum of twenty-five thousand dollars ($25,000.00) per annum, the city shall reimburse the county in the amount of such excess from such municipal court fines and forfeitures as by law would otherwise become the property of the city." (Italics added.)

During the fiscal year under consideration the county paid out for the maintenance of the municipal court the sum of $61,271.91. It deducted from this the sum of $25,000, and demanded from the city payment of the difference, or the sum of $36,271.91. Of this amount the city declined to pay the sum of $6,270.91, claiming that the same did not represent expenditures for *maintaining said court* for said fiscal year. This action followed. The trial court rendered judgment in favor of the city.

The bill of exceptions upon which this appeal is presented shows that the case was presented to the trial court upon a stipulation. It was admitted therein that the sum of $54,720.46 was "a proper and legal expenditure for maintaining said Court." It was also stipulated that the amount in controversy, to wit, $6,270.91, was the cost of reporters', interpreters' and witnesses' fees in preliminary examinations of persons accused of crime in said court before the judges thereof sitting as committing magistrates, "which said sum plaintiff claims but defendant denies was a legal and proper expenditure in maintaining said Court for said fiscal year."

In its written opinion filed in the case the trial court appears to have based its decision in favor of defendant on the ground that payments for the fees of reporters, interpreters and expert witnesses are not specifically provided for in section 11c, *supra,* and that such functionaries cannot be considered as "other attachés," since those words follow the words "judges," "clerk," and "marshal," and, under the rule of *ejusdem generis,* must be construed as applying only to such attachés as are of a like kind with judges, clerks and marshals. Also, it held that the rule of *expressio unius est exclusio alterius* was applicable, and as section 11c enumerates the things upon which it is to operate, it is to be construed as excluding from its effect those not expressly mentioned. And the conclusion was that for the aforesaid reasons the *city* cannot be held liable for the fees in controversy.

Appellant argues that the overall expenses of maintaining the court, whether incurred while the judges thereof are sitting as committing magistrates or otherwise, are comprehended by section 11c, *supra,* and that the county should be reimbursed by the city for all of such expenditures in excess of the $25,000 per annum provided therein.

Respondent contends that the fees of court reporters, expert witnesses, and interpreters occasioned by preliminary examinations are not costs of *maintaining the court* and that the Legislature did not intend that such costs should be considered in determining the amount the *city* should pay the *county.* It further asserts that section 11c, insofar as it seeks to charge upon the city any part of the cost of maintaining a municipal court is special legislation and therefore unconstitutional and void, and that it violates the Municipal Affairs Amendment to the Constitution.

Respondent's argument upon the first of these contentions is that a judge of the municipal court when sitting as a committing magistrate is not sitting as a *court* or performing any function of the court as such; and that therefore the costs here in controversy are not costs of "maintaining the court"; that the Legislature did not intend, by section 11c, *supra,* to fix upon the city any charges which previously had been paid by the county, and that the costs in controversy were such as had previously been paid by the county. Reliance is also placed upon the use of the word *such* in the sentence reading: "However, if *such* charges upon the county for maintaining the municipal court," exceed the sum of $25,000, "the city

shall reimburse the county," etc.; and respondent says that only "such charges" as are specifically designated are to go into the total in excess of $25,000 for which the city must reimburse the county.

We think that respondent takes too narrow a view of the act, and that, in construing section 11c, and arriving at the intention of the Legislature, the scope and purpose of the measure as a whole must be considered. It was said in *County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634, 639 [122 P.2d 526], that "In the analysis of statutes for the purpose of finding the legislative intent, regard is to be had not so much to the exact phraseology in which the intent has been expressed as to the general tenor and scope of the entire scheme embodied in the enactments," quoting from *Palache* v. *Pacific Ins. Co.*, 42 Cal. 418, 430. (Also see *In re Sing*, 14 Cal.App. 512, 513-514 [112 P. 582]; *Gallagher* v. *Campodonico*, 121 Cal.App. Supp. 765, 769, 771 [5 P.2d 486]; *Welch* v. *Williams*, 96 Cal. 365, 367 [31 P. 222].)

Article VI, section 11, of the Constitution of this state, which authorizes the establishment of municipal courts, as adopted in amended form in 1934, provides:

"In any city or city and county which is governed under a charter framed and adopted under the authority of this Constitution, containing a population of more than forty thousand inhabitants, . . . a municipal court may be established as in this article provided, anything in this Constitution to the contrary notwithstanding. . . .

"The Legislature shall provide by general law for the establishment of such municipal courts in cities or cities and counties in this section specified, and for the Constitution, regulation, government, procedure and jurisdiction thereof. . . .

"In any city or city and county where such municipal court has been established . . . there shall be no other court inferior to the superior court, except that the Legislature may provide for the establishment of such inferior courts.

"Pending actions, trials, and all pending business of inferior courts within a city or city and county or township, upon the establishment of any such municipal court therein, shall, unless otherwise provided by law, be transferred to and become pending in such municipal court, and all records of such inferior courts shall be transferred to, and thereafter be and become records of, such municipal court. . . .

"The compensation of the justices or judges of all courts of

record shall be fixed, and the payment thereof prescribed, by the Legislature."

The Municipal Court Act, as in effect in 1941 when the city of Sacramento elected to adopt the municipal court system, provided in section 3 thereof for determination of the question of the establishment of a municipal court by a city by an election held therein. Section 4 provided that whenever and wherever a municipal court should be established there should be no other court inferior to a superior court (except a small claims court), and that all existing inferior courts should be superseded by the municipal court and all proceedings pending in such inferior courts should become proceedings in the municipal court. Section 26 provided, as to the powers and duties of municipal courts and judges, that "The municipal court and each judge thereof shall have and exercise all of the powers and shall do and perform all of the acts which were conferred upon, or required of, any police court, justice's court, police judge or justice of the peace, by law, whenever any such inferior court shall have been superseded by a municipal court and whenever any such police judge or justice of the peace shall become a judge of the municipal court by reason of any of the provisions of this act, and all such laws, not inconsistent herewith, are made applicable to any such municipal court and to each judge thereof." Section 28 provided that "Each municipal court shall have such jurisdiction in criminal cases as is now provided in section 1462 of the Penal Code of California, or as may hereafter be determined by the legislature"; and section 29 provided that municipal courts should have jurisdiction of civil cases and actions as provided in section 89 of the Code of Civil Procedure. Section 1462 of the Penal Code, as amended in 1933, extended the jurisdiction of municipal courts to crimes within the county but outside the city, in certain cases. (See *In re Luna,* 201 Cal. 405, 410 [257 P. 76] ; *In re Leach,* 99 Cal.App. 645, 648 [279 P. 157].) Such municipal courts also have jurisdiction in certain civil actions brought against residents of the county residing outside the boundaries of the city. (See *Burge* v. *Municipal Court,* 84 Cal. App. 425 [258 P. 164] ; *Borden* v. *Thomas,* 85 Cal.App. 646 [259 P. 1008].)

We think, from the general tenor and scope of the entire scheme embodied in the constitutional provision and the Municipal Court Act, that the Legislature intended, when

it provided in section 11c that the city should reimburse the county for expenses of maintenance of such court in excess of $25,000, that the overall expenses should first be paid by the county, and that, regardless of whether some of those expenses were incurred in connection with matters which it might be argued were for the benefit of the county alone, the city should, nevertheless, reimburse the county for all of the expense in excess of the $25,000 (now $33,000). While the disputed items of expense which were incurred in connection with preliminary examinations in which the judges sat as committing magistrates may be said to have been incurred for the benefit of the county alone, it is equally true that when the judges of the municipal courts sat as committing magistrates the services performed by them, their clerks, marshals and other attachés, were performed for the county, but no attempt was made by the Legislature to allocate a proportionate part of their salaries to the county alone, and there is no reason to assume that if they had intended that other expenses incident upon preliminary hearings should be borne by the county alone, they would not have so provided. Other items of expense may well have been incurred which, it might be contended, were for the benefit of the county only. It might well be argued that the city of Sacramento has no interest in crimes committed outside city limits and that the county alone should bear the total expense of prosecution in the municipal court of crimes committed in the county but outside the city limits. Also that when trying civil actions involving parties residing outside the city limits the county is the beneficiary since otherwise it would have to bear the total expense of courts trying them. But the Legislature has not made any provision for payment of same by the county alone. Apparently the Legislature believed that the $25,000 to be furnished by the county for the expenses of the court would be sufficient to meet all of the expenses attributable to service performed by such courts and the judges and other functionaries thereof for the benefit of the county, and that it was more practicable to provide a lump sum to be contributed by the county than to attempt to segregate the items of expense attendant upon services which might be said to be rendered for the county alone. That this was their intention is evidenced by the increase in 1943 of the amount to be borne by the county, which, it is proper to assume, was made on a showing that the $25,000 previously allocated was insufficient, and cast

upon the city an inequitable proportion of the overall expenses. ■ This conclusion is fortified by the language used in the 1943 amendment of section 11c wherein it was provided that the city "shall reimburse the county for *the* costs upon the county for maintaining the court," in excess of $33,000 per annum. While the section previously read "such costs" instead of "the costs," the change in the wording may properly be construed as one for clarification only. (See *Koenig* v. *Johnson*, 71 Cal.App.2d 739 [163 P.2d 746], and cases cited, pp. 753-755.)

■ As for the argument that the questioned fees were not intended to be included in the $25,000 and were not to be considered as a part of the amount paid by the city because of the wording of section 11c, as was said in *Palache* v. *Pacific Ins. Co., supra*: "Mere philology often sticks in the bark, and so becomes an obstruction rather than an aid to a correct exposition of the meaning of the statute." If the fees of court reporters, etc., are not to be considered as a part of the overall expenses for which the *city* is liable in excess of $25,000, by reason of the application of the rules of construction applied by the trial court and contended for by respondent, by the same line of reasoning they are not payable by the *county* in the first instance; for the statute (11c) does not use the disputed language directly in connection with the city, but provides what costs shall be paid by the *county*. Therefore, if the costs provided for by the section are limited so as to exclude the disputed items, then the county, by the same token, is not thereby charged with their payment in the first instance, and neither is made liable therefor. Such an intention cannot be attributed to the Legislature in the absence of language to that effect. The application of the rules of *ejusdem generis* and *expressio unius est exclusio alterius* does not tend to clarify the situation.

It is said in *Walters* v. *Bank of America etc. Assn.*, 9 Cal. 2d 46, 52 [69 P.2d 839], that "A statute should never be construed so strictly as to render it absurd or nugatory." And in *Hunt* v. *Manning*, 24 Cal.App. 44, 48 [140 P. 39], the court quoted from *State* v. *Broderick*, 7 Mo.App. 19, to the effect that: "The rule of *ejusdem generis* in statutory construction is by no means a rule of universal application, and its use is to carry out, not to defeat, the legislative intent. When it can be seen that the particular word by which the general word is followed was inserted, not to give a coloring

to the general word, but for a distinct object, and when, to carry out the purpose of the statute, the general word ought to govern, it is a mistake to allow the *ejusdem generis* rule to pervert the construction."

At the time the Legislature enacted the Municipal Court Act it knew that the judges of the municipal courts and the other officers and attachés thereof would act in hearings for commitments to the superior court; and it may be presumed that when it provided that the expenses of maintaining such court should be borne by the county to the extent of $25,000 it assumed that said sum would cover the proportion of the total expenses of the court in the performance of duties for the county which were performed by its functionaries in the performance of all of the duties formerly performed by the inferior courts which it superseded. No good reason appears why, if the expenses of preliminary hearings were to be borne by the county alone, it should not have so provided. It is not shown by the record that the sum of $25,000 was not ample to cover all of the expenses attributable to preliminary hearings held in said courts. For all that appears a lesser sum may have been adequate for such purpose, in which event the county might, by paying $25,000, be bearing some of the expense which, it might argue, was attributable to duties performed solely for the city. And if the 1941 provision proved inequitable it was open to the Legislature to increase the amount to be borne by the county, as it did in the amendment of 1943.

In *Dickey* v. *Raisin Proration Zone No. 1*, 24 Cal.2d 796 [151 P.2d 505, 157 A.L.R. 324], the court said, page 802:

"In attacking the problem of statutory interpretation here presented it is essential to remember the basic principle unqualifiedly declared by this court on numerous occasions and well stated in 23 California Jurisprudence, section 107, page 725, as follows: 'It is a cardinal rule that statutes are construed according to the intention, or at least according to the apparent or evident intention or purpose, of the lawmakers. Such intention controls, if it can be reasonably ascertained from the language used. Indeed, it has been said that the legislative intent in enacting a law is the law itself. Accordingly, the primary rule of statutory construction, to which every other rule as to interpretation of particular terms must yield, is that the intention of the Legislature must be ascertained if possible, and, when once ascertained, will be given

effect, even though it may not be consistent with the strict letter of the statute. In other words, as is declared by the Code, "in the construction of a statute the intention of the legislature . . . is to be pursued if possible." (Code Civ. Proc., § 1859.) Certainly the language of a statute should never be so construed as to nullify the will of the legislature, or to cause the law to conflict with the apparent purpose had in view by the lawmakers.' " (Citing *In re Haines,* 195 Cal. 605, 612 [234 P. 883]; *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 639 [122 P.2d 526]. Also see *Department of Motor Vehicles* v. *Industrial Acc. Com.,* 14 Cal.2d 189, 195 [93 P.2d 131].)

 Coming now to respondent's contention that appellant cannot recover because section 11c, "in so far as it seeks to charge upon the city of Sacramento a part of the cost of maintaining a municipal Court, is unconstitutional and void since it is special legislation," and "violates the municipal affairs amendment to the constitution," respondent is in the untenable position of asserting, first, that the Legislature has imposed something upon the city; second, that, though it has stipulated that a portion of the expense of maintenance of the court is a proper and legal charge even though it covers some of the expense of preliminary hearings, the act is none the less invalid; and, third, that while the city has obtained and still retains the benefits of such act it may still attack its validity.

Let it be noted first that section 11c was in effect in 1941 when the city, by the vote of the people, elected to adopt the municipal court system, to abolish the inferior courts theretofore in existence in the city and transfer the functions of such inferior courts to the municipal court. It cannot therefore be said that the Legislature imposed anything upon the city; rather the city elected to take advantage of the provisions of the act as then in effect. It thereby accepted the benefits and assumed the burdens provided therein. Therefore, if the city was the loser it was such, not by reason of any action by the Legislature, but by reason of its own action. It took this action charged with knowledge that the judges of its municipal court would perform the functions of committing magistrates, not only by reason of the act itself but by virtue of section 808 of the Penal Code, and with knowledge that its clerks, marshals and other attachés would become obligated to perform such duties as had theretofore been per-

formed by the clerks and other attachés of said inferior courts in whatever capacity the judges thereof had acted. It also elected to and assumed to pay its share of the salaries of such judges, clerks, etc., without allocation of any portion of such salaries to the performance of duties in matters involving preliminary hearings as such, as distinguished from their duties in connection with civil actions or those involving the prosecution of crimes triable in such courts. It is not contended by the city that any portion of the salaries of the judges, clerks, marshals and other attachés of the court earned by them in the performance of duties in connection with preliminary hearings should be borne by the county alone, though it might with equal logic so contend.

Respondent states in its brief that the inferior courts previously existing in the city which were absorbed by the municipal courts consisted of a police court and two justices' courts, and that the entire cost of maintaining the police court was paid by the city, while the costs of the justices' courts were borne by the county. When the city adopted the municipal court system, then, it is obvious that it elected that functions for which it had formerly paid, and functions for which the county had formerly paid, would be performed thereafter by the municipal court and that the expenses would thereafter be shared by both, but as provided for in section 11c of the act.

Reference to the city charter, sections 144 to 148, shows that its police court had jurisdiction ''of all misdemeanors enumerated by the general laws or by ordinances of the city and of all other crimes cognizable by Justices' Courts and Courts of Justices of the Peace and Police courts under the Constitution and laws of the State of California,'' of ''the examination and commitment of persons charged with the commission of any offense that may be prosecuted by indictment or information''; and ''such other criminal jurisdiction as is, or may hereafter be conferred by law upon Police Courts, Justices' Courts, or Justices of the Peace, . . . .'' It was further provided that the police court as organized under the charter should take over and proceed with all actions and proceedings pending and undetermined in the police court as it existed prior to the taking effect of the charter. Since it is admitted that the entire cost of maintaining the police court was borne by the city, the cost of said court while its judges and other functionaries were engaged in preliminary

hearings, was, we must assume, borne by the city. It therefore cannot be said that it obtained no benefit from the statutes which it now assails as unconstitutional. It must be presumed to have weighed the advantages of the new system as against its disadvantages, if any, and concluded in favor of the adoption of the system. We cannot assume that it was acting for other than what it presumed would be its own advantage; and having accepted the benefits of the statute it is now in no position to question its constitutionality.

It is said in *Hershey* v. *Reclamation District No. 108*, 200 Cal. 550, 564 [254 P. 542], that the right to question the constitutionality of a statute may be waived, citing 12 Corpus Juris 785; and that one who receives the benefit of an unconstitutional law is estopped from asserting its unconstitutionality, citing *Vickery* v. *Blair*, 134 Ind. 554 [32 N.E. 880]. In the cited case, plaintiff, a taxpayer, sued to enjoin the commissioners of a county from levying a tax to pay the bonds issued by the county to pay for a toll road which the voters had duly voted to purchase, it being contended by plaintiff that the act under which the tax was levied was unconstitutional. The court said that plaintiff had waited until the road had been conveyed to the county and it had paid for it; that he had received all the benefits contemplated by the law, and now sought to avoid payment for such benefits, and that one who receives a benefit under an unconstitutional law is estopped from denying its constitutionality.

In *Foster* v. *Superior Court*, 26 Cal.App.2d 230, 234 [79 P.2d 144], the court said that "a person who has participated in proceedings under a statute, or who has acted under the statute and in pursuance of the authority conferred by it, or who has claimed the benefit of the statute to the detriment of others, or who asserts rights under it, may not question its constitutionality," citing 12 Corpus Juris 769; 11 American Jurisprudence 766, 767; *Gregory* v. *Hecke*, 73 Cal.App. 268, 284 [238 P. 787]; *Ison* v. *Western Vegetable Distributors*, 48 Ariz. 104 [59 P.2d 649, 654, 655]; *Nuckolls* v. *United States*, 76 F.2d 357, 360.

In *Booth Fisheries Co.* v. *Industrial Commission of the State of Wisconsin*, 271 U.S. 208 [46 S.Ct. 491, 70 L.Ed. 908], it was contended that a provision of the state Workmen's Compensation Act which limited the review of findings of fact of the commission was unconstitutional; that it deprived appellant of his day in court to which he was entitled under

the Fourteenth Amendment. The court said, pages 210-211 (L.Ed. pp. 910-911):

"A complete answer to this claim is found in the elective or voluntary character of the Wisconsin Compensation Act. That act provides that every employer who has elected to do so shall become subject to the act. . . . If the employer elects not to accept the provisions of the compensation act, he is not bound to respond in a proceeding before the Industrial Commission under the act, but may await a suit for damages for injuries or wrongful death by the person claiming recovery therefor, and make his defense at law before a court in which the issues of fact and law are to be tried by jury. In view of such an opportunity for choice, the employer who elects to accept the law may not complain that in the plan for assessing the employer's compensation for injury sustained, there is no particular form of judicial review. . . .

"More than this, the employer in this case having elected to accept the provisions of the law, and such benefits and immunities as it gives, may not escape its burdens by asserting that it is unconstitutional. The election is a waiver and estops such complaint. *Daniels* v. *Tearney*, 102 U.S. 415, 26 L.Ed. 187; *Grand Rapids & I. R. Co.* v. *Osborn*, 193 U.S. 17, 48 L.Ed. 598, 24 S.Ct. 310."

In *Grand Rapids & Indiana Ry. Co.* v. *Osborn*, 193 U.S. 17 [24 S.Ct. 310, 48 L.Ed. 598], it was held that the railway company, having voluntarily accepted the privileges and benefits of the incorporation laws of Michigan, was bound by the provisions of the then existing laws regulating rates of fares upon railroads, and was estopped from repudiating the burdens attached by the statute to the privilege of becoming an incorporated body.

*United States* v. *Golden Gate Bridge and Highway District of California*, 37 F.Supp. 505, involved a permit from the government to the district for rights of way over government land as approaches to the bridge, which permit provided for toll free traffic of certain military and governmental employees and their dependents. The district contended that the "toll free" provision was void as violating the "equal protection of the laws" clause of the federal Constitution. The court said, at page 510:

"Defendant also argues that any act on the part of the Legislature depriving defendant of the right to impose tolls was unconstitutional and void, and deprived defendant of its

property without due process of law. One cannot avail himself of the benefits of a statute or law and at the same time challenge its constitutionality. *Buck* v. *Kuykendall,* 267 U.S. 307, 316, 45 S.Ct. 324, 69 L.Ed. 623, 38 A.L.R. 286; *Daniels* v. *Tearney,* 102 U.S. 415, 421, 26 L.Ed. 187; *Grand Rapids & Indiana Railway Co.* v. *Osborn,* 193 U.S. 17, 29, 24 S.Ct. 310, 48 L.Ed. 598.''

In *Buck* v. *Kuykendall,* cited *supra,* Justice Brandeis said:
''It is true that one cannot, in the same proceeding, both assail a statute and rely upon it. *Hurley* v. *Commission of Fisheries,* 257 U.S. 223, 225, 66 L.Ed. 206, 207, 42 S.Ct. 83. Compare *Wall* v. *Parrot Silver & Copper Co.,* 244 U.S. 407, 411, 61 L.Ed. 1229, 1230, 37 S.Ct. 609. Nor can one who avails himself of the benefits conferred by a statute deny its validity. *Pierce Oil Corp.* v. *Phoenix Ref. Co.,* 259 U.S. 125, 66 L.Ed. 855, 42 S.Ct. 440; *St. Louis Malleable Casting Co.* v. *George C. Prendergast Constr. Co.,* 260 U.S. 469, 472, 67 L.Ed. 351, 43 S.Ct. 178.''

(Also see *County of Contra Costa* v. *American Toll Bridge Co.,* 10 Cal.2d 359, 366-367 [74 P.2d 749]; *Higbie* v. *County of Los Angeles,* 47 Cal.App.2d 281, 289 [117 P.2d 933]; *Slick* v. *Hamaker,* 28 F.2d 103; *United States* v. *Hawthorne,* 31 F.Supp. 827, 829, and cases cited; *Tovrea Packing Co.* v. *Live Stock Sanitary Board,* 44 Ariz. 151 [34 P.2d 420, 422]; 11 Am.Jur. 767-769.) And that a governmental agency, as well as an individual, may be estopped in a proper case was stated in *Farrell* v. *County of Placer,* 23 Cal.2d 624, 627-628 [145 P.2d 570, 153 A.L.R. 323].

As for the constitutionality of the statutory provisions attacked by respondent, the courts presume that legislative acts are valid; and all doubts are to be resolved in favor of their validity. (23 Cal.Jur. 757-758.) And we are not disposed to say, in this action, that the very statutes upon which the existence of the municipal court of the city is based, are unconstitutional.

The judgment is reversed.

Respondent's petition for a hearing by the Supreme Court was denied September 16, 1946.