[Civ. No. 16845.   First Dist., Div. Two.   Sept. 17, 1956.]

THE AMERICAN DISTILLING COMPANY (a Corporation), Respondent, v. STATE BOARD OF EQUALIZATION, Appellant.

Edmund G. Brown, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Appellant.

Eisner & Titchell, Norman A. Eisner and Haskell Titchell for Respondent.

KAUFMAN, J.—The State Board of Equalization appeals from a judgment in favor of respondent American Distilling Company in a declaratory relief action concerned with the interpretation of a certain provision of the Alcoholic Beverage Control Act.

The American Distilling Company, which holds a distilled spirits manufacturer's license issued by the State of California, operates a plant in Sausalito, in which it manufactures gin, vodka, and whiskey. In the manufacture of its products it uses neutral spirits or alcohol. ██  A large part of the alcohol used is distilled from grain at the Sausalito plant, but in some of its products, the company uses alcohol which it imports in tank cars from Illinois. This alcohol, derived from grain, is in an impure condition when received at the distillery and is unfit for human consumption. It is then distilled at the Sausalito plant, the impurities removed and the proof reduced to make it fit for beverage purposes.

Respondent pays a federal tax on the imported alcohol after it has been distilled in the Sausalito plant and placed in a bonded warehouse. The federal government treats this alcohol for tax purposes the same as if it had been originally produced by respondent at its Sausalito distillery.

The sole issue on this appeal is whether the beverages manufactured from the imported alcohol are distilled spirits originally distilled in this state within the meaning of section 23363, Business and Professions Code. That section reads as follows: "Distilled spirits manufacturers; sales to licensees. Any licensed manufacturer of distilled spirits originally distilled in this State may sell them to any person holding a license authorizing the sale of distilled spirits."

The trial court held that respondent had the right under the above statute to sell the alcoholic beverages manufactured from the imported alcohol to retailers. It found that the alcohol is completely redistilled by the company at its distillery in Marin County in the same manner as any other raw material, that in manufacturing some of its products, additional materials are added to the alcohol at the time of the distillation to obtain the distilled spirits.

After the distillation at respondent's plant, some of this alcohol is made into vodka by putting it in a tank and treating it with carbon for a certain length of time. Gin is produced by combining the purified alcohol with botanicals and distilling the combined materials. The reprocessed alcohol is also used in the making of whiskey by adding it to whiskey distilled at the plant, forming a new product.

Appellant maintains that the processing performed by respondent at its Sausalito plant is a rectification rather than a distillation. The act defines a rectifier as "every person

who colors, flavors, or otherwise processes distilled spirits by distillation, blending, percolating, or other processes." (Bus. & Prof. Code, § 23016.) A distilled spirits manufacturer is defined as "any person who produces distilled spirits from naturally fermented materials *or in any other manner.*" (Bus. & Prof. Code, § 23015.) (Emphasis ours.) ▮ A rectifier, then, is one who processes distilled spirits which are already in existence; a manufacturer is one who produces such spirits. Both use the distillation process in accomplishing their objective. If the alcohol is a distilled spirit within the meaning of the act in the condition in which it is received in the tank cars, then appellant is correct in concluding that the distillation of the alcohol is merely rectification.

The basic question is, therefore, whether under the act the distilled spirits come into existence at respondent's plant, or are already in existence when the alcohol is received there. Appellant does not contend that the alcohol is merchantable as a beverage when it arrives at the plant. The distillation at Sausalito is necessary to convert the alcohol into a liquid fit for human consumption. The alcohol is subjected to the same distilling process that other raw materials are subjected to in making liquors.

Alcoholic beverage is defined by the act as including "alcohol, spirits, liquor, wine, beer, . . . and which is fit for beverage purposes either alone or when diluted, mixed, or combined with other substances." (Bus. & Prof. Code, § 23004.) "Distilled spirits" are defined in the following section as "*an alcoholic beverage obtained by the distillation of fermented agricultural products, and includes alcohol for beverage use, spirits of wine, whiskey, rum, brandy, and gin,* including all dilutions and mixtures thereof." (Bus. & Prof. Code, § 23005.) (Emphasis ours.)

The alcohol as received is clearly not an alcoholic beverage under section 23004, for it is not fit for drinking purposes as it is, or when diluted, mixed or combined with other substances. It has to be subjected to the distillation process before it is transformed into a consumable product. True, section 23005 states that distilled spirits is a beverage obtained by distillation of fermented agricultural products. This indicates the origin of such beverage, for section 23015 recognizes that distilled spirits may be manufactured from naturally fermented materials or in other ways. ▮ A "distilled spirit" under the act, therefore, must be a beverage having

its origin in fermented agricultural products, but it does not necessarily become a beverage in the initial distillation of the agricultural products, otherwise the manufacture of such spirits "in any other manner" in section 23015 would appear to be contradictory.

Since a "distilled spirit" apparently must be a beverage under the act, or a substance that can be used as such when diluted, combined or mixed with other substances, it would seem that the liquors manufactured from the impure alcohol in the respondent's distillery, are "distilled spirits" originally distilled in this state. The original distillation which creates the beverage occurs here. Appellant, arguing that this is mere rectification, sets forth the dictionary definition of distillation as "To subject to, or transform by, distillation; as to distill molasses, in making rum; to distill barley, rye, corn, etc." The distillation process is used in creating an alcoholic beverage as well as in rectifying it after it has been created. Hence, the definitions of distill and rectify are not particularly helpful here. ▇ Under the statutory definitions, respondent clearly was a manufacturer of the distilled spirits, and not a rectifier, the alcohol was transformed into a beverage at respondent's plant, and only then became "distilled spirits" under the statute.

Appellant cites *United States* v. *Tenbroek*, 15 U.S. 248 [4 L.Ed. 231], wherein the distinction between distilling and rectifying was considered. Defendant was charged with distilling spirituous liquors without a license. He contended that he rectified the spirits in his distillery after they had been distilled from domestic materials, that he was but performing secondary distillations by purifying the spirits. The specific tax with which the court was there concerned was levied on stills producing spirituous liquors from domestic or foreign materials. The court stated that the distillation process consisted of a double process, the first producing low wines; the second, the distillation of spirits of first, second, third or fourth degree proof which were marketable. At this point, the court declared, the distillation process ended. Later distillations were considered part of the process of rectification. Respondent states that the above cited case found that the material processed by the defendant therein was at the time of such processing, a spirituous liquor ready for consumption. The opinion, however, only states that it was a marketable product, and it cannot be determined from

this expression whether or not it was a consumable beverage without further processing; hence the case is not particularly helpful to either party herein.

Appellant argues that since one of the purposes of the Alcoholic Beverage Control Act is to promote the economic welfare of the state, the economic well-being of the people of this state would be greatly furthered if manufacturers distilled alcoholic beverages from grains produced locally. However, under appellant's interpretation of section 23363, the grain could be shipped in from other states or countries by respondent, and he would still be entitled to sell the product to retailers, for there could then be no doubt that the original distillation would take place in this state. It is, of course, true as appellant argues, that because of shipping costs, it would be more likely that local grain would be used, and that more local labor might be employed in distilling beverages from grain instead of from alcohol.

Respondent takes the position that the act was designated as a regulatory measure. Section 23001, Business and Professions Code, states that this division is an exercise of the police power for "the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling and disposing of alcoholic beverages, and promote temperance in the use and consumption of alcoholic beverages." That section goes on to state that the subject matter of this division "involves in the highest degree the economic, social, and moral well-being and safety of the State and all of its people." From the word "economic" in this last sentence appellant derives the intent to encourage agriculture and labor in this state by granting a profitable privilege to manufacturers who use California raw materials in their distilleries. When read in connection with the previous sentence the economic welfare of the people seems to be that achieved by strict regulation and curtailment of the use of liquor, the economic benefits resulting to the people from the promotion of temperance, rather than those resulting from the promotion of the liquor industry. In *Ainsworth* v. *Bryant*, 34 Cal.2d 465, 470 [211 P.2d 564], it is said that the Alcoholic Beverage Control Act, designed to supersede earlier statutes relating to the control of the liquor traffic, "is generally regarded as a regulatory measure." (And see 3 Cal.Jur.2d, 65, § 7.) The act is aimed at the control of distilled spirits as they are defined in the act.

It is true, as appellant argues, that even unrefined alcohol is usually defined as a "distilled spirit." (See *Commercial Solvents Corp.* v. *Riley,* 7 Cal.2d 731, 733 [62 P.2d 588].) Such definition would control in the absence of a specific definition in the act itself. In this case the act contains the definition that is to be used in the interpretation of that term. Section 23002, Business and Professions Code, states that "unless the context otherwise requires, the definitions . . . set forth in this chapter govern the construction of this division." It must be determined, then, whether there is anything in the context which requires that the statutory definition be disregarded, and the broader meaning of the term employed.

Appellant maintains that the history of the legislation supports the board's interpretation. Originally, the holder of a distilled spirits manufacturer's license was authorized to sell alcoholic beverages to a retail licensee under section 6, subdivision (a) of the Alcoholic Beverage Control Act of 1935. (Stats. 1935, p. 1127.) In 1937 the distilled spirits manufacturer's agent's license was created by adding subdivision (n) to section 6 (Stats. 1937, p. 2135). That license, issued to companies selling liquor in California, but operating distilleries *outside* the state, did not give such licensees the privilege of selling to retailers. An amendment to subdivision (a) of section 6, in 1937, restricted the privilege of a manufacturer to selling only to wholesalers, rectifiers and manufacturers, with the exception that "distilled spirits *produced* in this State" might be sold to retailers. (Emphasis ours.) Then in 1941, the same subdivision was amended to read "distilled spirits originally distilled in this State." This change obviously grants the privilege of selling at retail only to those who create "distilled spirits" through a distillation process. Appellant contends that the change in phraseology from "produce" to "originally distilled" indicates an intention on the part of the Legislature to change the meaning to a more restricted interpretation. Undoubtedly this is true. Under the earlier law a liquor such as vodka, could be produced by treating imported beverage alcohol in a manner similar to that described in this record and the producer would have the privilege of selling it at retail, although no distillery was operated in this state by the producer. Whiskey could also be produced by simply mixing imported beverage alcohol with other imported distilled spirits. The intent to narrow the privilege is apparent from a comparison of the

language of the amendment with that of the earlier statute. The Assembly Journal for 1941 reveals that this amendment had its origin in the Committee on Public Morals. (Assembly Journal 1941, p. 1195.)

The provisions of the act just preceding section 23363 allow the manufacturers of beer, wine and brandy, the privilege of selling their products to any person having a license authorizing the sale of such products. If a plan to promote agriculture was part of the purpose of this legislation, it would seem that it would have been made applicable to the beer manufacturers as well. Beer manufacturers, under the act, may import all their grains from neighboring states and still claim the privilege of selling to retailers.

There does appear to be an indication of a plan to prefer the local producer to the out of state producer of alcoholic beverages. This can be justified under the regulatory purpose of the act, for California can better protect the safety and health of its people in regard to such products when distilleries, breweries and wineries are subject to standards in force in this state. For such purpose, it would seem to be immaterial whether the manufacturer of distilled spirits uses as raw material grains or crude alcohol, as long as the beverage is distilled in this state.

It is urged that the evidence does not support the implied finding that the blended whiskey produced from this alcohol and a mixture of other whiskey is "distilled spirits" originally distilled in this state. Appellant says that the evidence was to the effect that the whiskey with which this alcohol is mixed may or may not have been distilled at the Sausalito plant. The witness stated that the whiskey with which the alcohol is mixed does not have to be distilled at respondent's plant, that it can be, and that normally it is, as respondent uses principally all its own products. No doubt the court inferred from this evidence that respondent in the past used only locally distilled whiskey in producing the whiskey which is mixed with the distilled alcohol. Appellant contends that the judgment gives respondent blanket approval to mix this alcohol with other whiskeys regardless of their origin, and sell the mixture to retailers as distilled spirits "originally distilled in this State." The judgment decrees that "plaintiff has the right to sell distilled spirits manufactured by it at its distillery . . . from alcohol transported under federal regulations from other distilleries to the holders of retail licenses for the sale of distilled spirits." We agree with ap-

pellant's contention in this connection. ■ The whiskey to which the alcohol is added in the production of another whiskey, must be California produced whiskey, otherwise, the final product would not meet the test of section 23363.

There appears to be no merit in respondent's argument that the application of section 23363 as contended for by appellant, would be unconstitutional. The Legislature undoubtedly had authority to limit the privilege of selling direct to retailers in accordance with certain prescribed conditions. (*Tokaji* v. *State Board of Equalization*, 20 Cal.App.2d 612, 614 [67 P.2d 1082].) And a favoring of home production over foreign production would not be unconstitutional, for complete authority is granted to the states under the 21st Amendment to the United States Constitution in this area. (*State Board of Equalization* v. *Young's Market*, 299 U.S. 59 [57 S.Ct. 77, 81 L.Ed. 38]; *Mahoney* v. *Joseph Triner Corp.*, 304 U.S. 401 [58 S.Ct. 952, 84 L.Ed. 1424].) ■ Furthermore, since respondent relies on section 23363 for the asserted privilege to sell directly to retailers, it cannot at the same time attack its constitutionality. (*County of Sacramento* v. *City of Sacramento*, 75 Cal.App.2d 436, 447 [171 P.2d 477]; *Hurley* v. *Commission of Fisheries*, 257 U.S. 223, 225 [42 S.Ct. 83, 66 L.Ed. 206]; *St. Louis Malleable Casting Co.* v. *George C. Prendergast Constr. Co.*, 260 U.S. 469 [43 S.Ct. 178, 67 L.Ed. 351].)

■ We conclude that the definition of distilled spirits used in the statute must control. The declaratory judgment is hereby modified by substituting the words "distilled by it" for "manufactured by it" in the paragraph declaring the future rights of respondent. This modification will prevent the manufacture of liquors from beverage alcohol imported into this state which would require no distillation to convert it into "distilled spirits" under the statute.

Judgment affirmed as modified.

Nourse, P. J., and Draper, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.