[Civ. No. 51128. Second Dist., Div. One. Dec. 28, 1977.]

COALITION FOR LOS ANGELES COUNTY PLANNING IN THE PUBLIC INTEREST et al., Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF LOS ANGELES COUNTY, et al., Defendants and Appellants.

242

## COUNSEL

John H. Larson, County Counsel, and David H. Breier, Deputy County Counsel, for Defendants and Appellants.

Carlyle W. Hall, Jr., Brent N. Rushforth and John R. Phillips for Plaintiffs and Respondents.

## OPINION

**LILLIE, J.**—Defendants appeal from a post-judgment order awarding $170,000 as reasonable attorneys' fees to plaintiffs'[1] attorneys. They challenge the propriety of the award per se and as to amount. We affirm the order.

Plaintiffs are the Coalition for Los Angeles County Planning in the Public Interest, Sierra Club, Malibu Township Council, Inc., Palos Verdes Coast Watch and three individuals. In the main action they sought writ of mandate, declaratory and injunctive relief testing the validity of the June 28, 1973, amendments to the General Plan for Los Angeles County of October 1, 1970 (1973 General Plan), and certain implementing ordinances. After apparently extensive discovery and following a 10-day trial, the relief prayed for was granted. It was determined that the 1973 General Plan was void as having been founded upon an inadequate environmental impact report (EIR) prepared in ostensible compliance with the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) and as violative of the Planning and Zoning Law (Gov. Code, § 65000 et seq.), that the open space element of the plan was also void for failure to comply with the Open Space Lands Act (Gov. Code, §§ 65560-65570), and that the two ordinances in question were also void, in one case because the required EIR was inadequate and in the other because no EIR was prepared, no negative declaration was adopted and there was no evidence that the ordinance was enacted under a categorical exemption to the necessity for one or the other. The EIR on the 1973 General Plan was found to be inadequate for numerous reasons including, that it was internally inconsistent, did not include factual support for many of its conclusions

---

[1]For the sake of simplicity we use "plaintiffs" and "defendants" to refer respectively to plaintiffs/petitioners, respondents on appeal, and defendants/respondents, appellants.

and did not describe reasonable alternatives to the proposed general plan and their prespective environmental impacts. One of the most striking and least explained aspects of the plan was its proposal to designate some 178 square miles as urban expansion area over and above the 173 square miles provided by the 1970 General Plan even though the 1990 projected population of the county was 1.5 million persons fewer than predicted in 1970. Over 99 percent of the additional 178 square miles of urbanization encroached upon areas of prime soil, watershed, significant ecology, vegetation, gravel deposits, natural drainage and flood hazard or at least one of them. The 1973 General Plan conflicted with the Planning and Zoning Law in that it conformed largely to preexisting zoning rather than attempting to bring zoning into conformity with the plan.

The county board of supervisors was directed to set aside its adoption of the 1973 General Plan and the implementing ordinances, to prepare and adopt revisions of existing zoning ordinances to make them consistent with the general plan as adopted, to prepare and adopt a local open space plan consistent with state-declared objectives of such a plan, and to prepare and adopt an appropriate open space zoning ordinance designed to protect various natural resources from the dangers posed by developmental users. Defendants were enjoined from providing for the development, in a manner inconsistent with the uses stated in the 1970 General Plan, of the 178 square miles designated in the 1973 General Plan for additional urban development, the areas designated therein as "Significant Ecological Areas" and "Resource Management Zones" and areas designated "Open Rural and Agricultural Land" in the 1970 plan.[2]

[2]Defendants were permitted to continue the use of the 1990 Land Use Policy Maps, part of the 1973 General Plan during the period prior to compliance with the peremptory writ of mandate. In a footnote of the judgment the court explained: "In view of the obvious difficulty to the respondents and others who must administer the development of the county, and confusion to the public, from being required to immediately cease general use of the 1990 Land Use Policy Maps (which are a part of the 1973 General Plan), the judgment, through paragraph 14, provides for continued use of said maps as the basis for.the development policy through the mandate period.

"However, those areas in the County which are described in paragraph 13 are unique and their continued development under the 1973 General Plan will cause irreparable injury to said areas. The effect of paragraph 13 is to permit the continued developmemt of those areas which are described in said paragraph 13 in the same manner as respondents permitted said development under the Guide prior to adoption of the 1973 General Plan. Therefore, this judgment does not constitute a moratorium on development in the area described in paragraph 13(a), (b), or (c), but simply provides for the continuance of that developmental policy in said areas which was authorized by the Guide and its amendments and supplemental ordinances and which was practiced by the respondents through June 27, 1973."

The court reserved jurisdiction to determine the matter of attorneys' fees. In a two step procedure, it was first determined that plaintiffs were entitled to an award of fees under the "substantial benefit" theory; next the amount of fees was determined.

■ Was the award of attorneys' fees proper? Plaintiffs assert, as they did in the trial court, that it was, not only under the substantial benefit theory but under the "obdurate behavior" and "private attorney general" theories as well. Defendants insist that inasmuch as the trial court rejected all but the substantial benefit theory and because plaintiffs did not file a cross-appeal, the issue is limited to applicability of the theory adopted by the trial court. ■ While it is true that a judgment/order correct under any applicable theory must be affirmed, an appellate court will not employ a theory as grounds for affirmance where that theory rests on determinations of fact, the evidence on the facts was conflicting and the trier of fact made no determinations thereof. (See *Zak v. State Farm etc. Ins. Co.,* 232 Cal.App.2d 500, 506 [42 Cal.Rptr. 908].) Certainly the obdurate behavior theory[3] and very likely the private attorney general theory[4] require determinations which the court apparently declined to make. Moreover, an appellate court will not ordinarily consider issues not necessary to its decision. (6 Witkin, Cal. Procedure (2d ed. 1971) § 223, p. 4212.) Because we hold that the substantial benefit theory was properly applied we need not consider other theories under which the order awarding fees might be supportable.

The general American rule, reflected in California Code of Civil Procedure section 1021,[5] is that a prevailing litigant is not entitled to an award of attorneys' fees in the absence of statutory provision or contractual agreement therefor, neither of which is present in this case.

[3]The obdurate behavior theory, not yet endorsed in this state (see *Young v. Redman,* 55 Cal.App.3d 827, 838-839 [128 Cal.Rptr. 86]) is essentially based on the existence of bad faith on the part of the unsuccessful litigant. (*Hall v. Cole* (1973) 412 U.S. 1, 5 [36 L.Ed.2d 702, 707-708, 93 S.Ct. 1943].)

[4]The private attorney general theory as adopted by the Supreme Court in *Serrano v. Priest,* 20 Cal.3d 25, 45 [141 Cal.Rptr. 315, 569 P.2d 1303], as well as its formulation in Code of Civil Procedure 1021.5 (Stats. 1977, ch. 1197 eff. Jan. 1, 1978) requires as one element a determination that for vindication of the important public interest involved in the action private enforcement action is necessary. In this case the only light shed on this factor is disputation in the briefs of the parties.

[5]In relevant part the section reads: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ."

There have been developed, however, certain nonstatutory exceptions to this rule, the exceptions being based on the inherent equitable powers of the court. (*D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 25 [112 Cal.Rptr. 786, 520 P.2d 10].) ■ The earliest exception is called the "common fund" principle. Where a litigant has been responsible for the creation or preservation of a special fund to which other nonlitigants are entitled in common, a court may award attorneys' fees out of the fund to prevent the other claimants from being unjustly enriched at the expense of the party responsible for the common benefit. (See, e.g., *Estate of Stauffer,* 53 Cal.2d 124, 132 [346 P.2d 748].) The substantial benefit theory is derived from the common fund principle. A litigant whose action has been responsible for conferring on a group substantial nonpecuniary benefits may similarly be awarded his attorneys' fees. The earliest California case employing this theory (*Fletcher* v. *A. J. Industries, Inc.,* 266 Cal.App.2d 313 [72 Cal.Rptr. 146]) involved a corporate derivative action. The efforts of the stockholder plaintiffs, while not resulting in a common fund of money, produced significant benefits in the form of changes in corporate management policies or procedures— corporate therapeutics (*Mills* v. *Electric Auto-Lite* (1970) 396 U.S. 375, 396 [24 L.Ed.2d 593, 608-609, 90 S.Ct. 616])—which inured to the benefit of all shareholders. By awarding fees payable by the defendant corporation the costs of suit were spread among those who benefited thereby—the shareholders.[6] The next setting in which the substantial benefit theory was employed involved a taxpayers' suit in which a writ of mandate issued generally to compel the City and County of San Francisco to undertake an investigation of property tax assessment practices and to take steps to assess and collect property taxes on parcels of property found to be not assessed or under-assessed by the assessor's office. (*Knoff* v. *City etc. of San Francisco,* 1 Cal.App.3d 184 [81 Cal.Rptr. 683].)

With reference to these cases, defendants maintain that the substantial benefit rule is applicable only in the case of a corporate derivative or class action. While there is language in some cases (e.g., *D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 25 [112 Cal.Rptr. 786, 520 P.2d

---

[6] Despite some earlier confusion on the point it is now clear that the benefit must be to those represented, not the defendant, and the award of fees must serve to apportion the costs of suit among the benefited group. (*Serrano* v. *Priest,* 20 Cal.3d 25, 40, fn. 10 [141 Cal.Rptr. 315, 569 P.2d 1303]; see *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240, 265, fn. 39 [44 L.Ed.2d 141, 157-158, 95 S.Ct. 1612].)

10]) which seems to say as much, the statements must be considered as reflecting the history of the theory not its dimensions.

In *Mandel v. Hodges,* 54 Cal.App.3d 596 [127 Cal.Rptr. 244], which was neither a corporate derivative nor class action, plaintiff obtained declaratory and injunctive relief barring the Governor from ordering the closure of state offices on Good Friday between the hours of noon and 3 p.m. and from granting state employees paid time off during the three-hour period and enjoining the Controller from paying employees for time taken off from work during the period. The trial court found that the plaintiff was a member of an ascertainable class of state employees and that her attorneys had acted not only on her behalf but in the general public interest and on behalf of members of her class. The award of attorneys' fees under the substantial benefit principle was affirmed, notwithstanding that the action had not been brought as a class action.

In an action not unlike that brought by plaintiffs here, this court recently upheld appellants' claim to attorneys' fees under the substantial benefit theory where the action was representative in nature but not a class action. (*Woodland Hills Residents Assn.* v. *City Council,* 75 Cal.App.3d 1 [141 Cal.Rptr. 857].)

■ Clearly the fact that the action is not a corporate derivative or class action does not prevent application of the substantial benefit principle. Rather, to qualify for use of the principle, a suit must: (1) be one in which the court's equitable powers come into play, (2) be commenced and maintained as a *representative* action (see *Card* v. *Community Redevelopment Agency,* 61 Cal.App.3d 570, 583 [131 Cal.Rptr. 153]), and (3) result in a disposition that confers substantial benefits either pecuniary or nonpecuniary[7] upon the persons represented. (*Mandel v. Hodges,* 54 Cal.App.3d 596, 622 [127 Cal.Rptr. 244].) "In such circumstances, the court, in the exercise of its equitable discretion, thereupon may decree that under dictates of justice those receiving the benefit should contribute to the costs of its production." (*Serrano* v. *Priest,* 20 Cal.3d 25, 38 [141 Cal.Rptr. 315, 569 P.2d 1303].)

---

[7]The benefits may not be of a purely conceptual or doctrinal character. (*Serrano* v. *Priest,* 20 Cal.3d 25, 42 [141 Cal.Rptr. 315, 569 P.2d 1303].) On oral argument defendants suggested that the benefits resulting from the main action were not of the requisite actual and concrete kind. Unlike *Serrano,* however, where any benefits resulting from the trial court's decision were dependent upon subsequent legislative response in determining the

The trial court found the elements of the substantial benefit theory to be present in this case and exercised its discretion to award fees.[8] Defendants proceed to argue, however, that there is no ascertainable class of persons benefiting from the result in the main action citing certain federal authorities (e.g., *Satoskar* v. *Indiana Real Estate Commission* (7th Cir. 1975) 517 F.2d 696, 698) to the effect that the benefited group must be comparatively small and readily ascertainable. In the trial court's opinion the class of persons benefited is the residents of the County of Los Angeles. This class is no less ascertainable than and on the same order of size as taxpayers of the City and County of San Francisco (*Knoff*), citizens and taxpayers of the state (*Mandel*), the public school children and taxpayers of the state (see *Serrano* v. *Priest,* 20 Cal.3d 25, 40, fn. 10 [141 Cal.Rptr. 315, 569 P.2d 1303]), or the citizens of the City of Los Angeles (*Woodland Hills Residents Assn.*). Limitations on a federal court's exercise of its equitable powers under the substantial benefit doctrine simply have no bearing on this case.

The fact that it is the taxpayers of the county who will ultimately bear the cost of plaintiffs' attorneys' fees rather than all residents of the county (assuming that these are not coextensive classes) does not make the award improper. The same was apparently true in *Mandel* and *Woodland Hills Residents Assn.,* and it is simply a fact of life that the taxpayer pays to maintain a state of civilization which nontaxpayers enjoy.

Similarly, the fact that nonresidents of Los Angeles County, for example those in adjoining counties or visitors to this county, will enjoy the environmental benefits resulting from the main action does not mean that it is unfair for only the taxpayers of the county to pay plaintiffs' attorneys' fees. Especially in the case of environmental litigation is it

---

manner and level of funding for the state's educational system, the benefits in this case flowed directly and immediately from the decision of the court. Defendants were prevented at least from undertaking or permitting ill-considered intrusion on sensitive areas of the environment. It may be, but in view of the findings of the trial court it is not likely to be true that the General Plan ultimately formulated by the county will be the same as the 1973 General Plan. If that were so it would still be true that the residents of the county would have had the benefit of a reasoned consideration of alternatives to the plan as well as the assurance that relevant state declared policies have not been ignored. (Cf. *Woodland Hills Residents Assn.* v. *City Council,* 75 Cal.App.3d 1, 9-11 [141 Cal.Rptr. 857]; but see *Friends of "B" Street* v. *City of Hayward,* 75 Cal.App.3d 148, 154 [142 Cal.Rptr. 50].)

[8]What was implicit in the court's award of fees is discussed in the court's "Informal Memorandum re Attorneys' Fees" to which we have referred for guidance as to the grounds for the court's ruling. (See 6 Witkin, Cal. Procedure (2d ed. 1971) § 231, p. 4221.)

possible to argue that more than those persons represented in the action will benefit from its success. Indeed, one might plausibly argue, taking the large view, that significant protection of the environment in any one part of the world inures to the benefit of the whole. The irony of asserting this as a ground to defeat an award of fees is that a successful plaintiff whose action results in only a limited benefit might be entitled to fees while one producing a more widespread benefit would not. The argument is far from compelling. The 1973 General Plan and its implementing ordinances attacked by plaintiffs were fundamentally the actions of Los Angeles County's elected officials. The plan determined the channels which future growth in this county would follow. The direct and primary beneficiaries of plaintiffs' efforts are the residents of Los Angeles County. (Cf. *Woodland Hills Residents Assn.* v. *City Council,* 75 Cal.App.3d 1, 10 [141 Cal.Rptr. 857].)

Defendants make two related contentions that plaintiffs are not entitled to attorneys' fees because they were not adequate representatives of a class and no substantial benefits were conferred on all county taxpayers. Both contentions rest on an asserted clash of interests. Plaintiffs, it is said, represent only those persons whose interest in the environment is superior to their interest in land development. What, defendants ask, about those persons, for example builders and those who, in an era of high unemployment, might be employed by them, who are more interested in development than in environmental concerns? But this is a dubious argument.[9] The result of plaintiffs' action is not to prevent development but to accommodate it within the boundaries of environmental concerns as declared by the Legislature. The relief granted by the trial court implements those policies which, in the opinion of the Legislature, will best further the interests of all Californians in the environment. Those areas in which development was enjoined generally represent significant natural benefits to the residents of the county, e.g., watershed, natural drainage and the like. There is nothing in the record to indicate that whatever development plans were in the works for these areas cannot be as readily located in the area provided in the 1970

---

[9]Defendants rely heavily at this point on *Northington* v. *Davis,*\* (Cal.App.) where the court observes that the result of plaintiffs' action may have been as much a detriment as a benefit to the group of taxpayers purportedly represented in the action. Properly considered, this factor goes to whether the action has resulted in a *substantial* benefit. In any case, the granting of the petition for hearing in *Northington* makes its citation improper. (Cal. Rules of Court, rules 976(d).977.)

\*Reporter's Note: Hearing granted, February 3, 1977 (L.A. 30731).

General Plan for such uses. In any case, there was ample evidence before the trial court to support its conclusion that substantial benefits were conferred on the residents of the county.

■ Defendants' contention that the fees awarded are excessive is readily disposed of. The trial court considered the time sheets for the various attorneys working on plaintiffs' case. It disallowed some hours in response to defendants' objections. Reasonable hourly rates acceptable to defendants, were fixed. After computing hours times hourly rate ($83,160) the court considered such additional factors as the contingent nature of the employment, the quality of the work, difficulty of pretrial and trial preparation, importance of the suit, and the public nature of plaintiffs' position. Taking the holistic approach both sides urged, the figure of $170,000 was reached. This was precisely the technique endorsed by the Supreme Court in *Serrano* v. *Priest,* 20 Cal.3d 25, 48-49 [141 Cal.Rptr. 315, 569 P.2d 1303]. Indeed the consideration of just such factors has long been required. (See, e.g., *Berry* v. *Chaplin,* 74 Cal.App.2d 669, 679 [169 P.2d 453].)

In the absence of a manifest abuse of discretion, the court's determination of fees must be upheld. (*Independent Iron Works, Inc.* v. *County of Tulare,* 207 Cal.App.2d 164, 167 [24 Cal.Rptr. 361].) Defendants have demonstrated no abuse in this case.

The order is affirmed.

Wood, P. J., and Hanson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 23, 1978. Clark, J. and Manuel, J., were of the opinion that the petition should be granted.