[No. G003572. Fourth Dist., Div. Three. Apr. 28, 1988.]

PATRICIA SPELLIS et al., Plaintiffs and Appellants, v.
JAMES S. LAWN, Defendant and Respondent.

**COUNSEL**

Patricia Herzog for Plantiffs and Appellants.

Hunt, Colaw & Roe and Mario W. Mainero, Jr., for Defendant and Respondent.

## OPINION

**WALLIN, Acting P. J.**—Plaintiffs, an ex-wife and her adult children, asserted novel theories of recovery in tort against their former spouse and father in an action for compensatory and punitive damages based on his 16-year evasion of his support obligation. The court sustained a demurrer to all causes of action without leave to amend and dismissed the thrice-amended complaint. We affirm.

I

Plaintiffs alleged, and we assume for purposes of review, the following facts: Patricia Spellis and James Lawn were married in Ohio in 1952. They obtained an Ohio divorce in 1963 and Patricia was awarded custody of the couple's four young children. James was ordered to pay $40 per week in child support.

James made no payments, moved to California and asked Patricia to remarry him here. She did, in May 1964. Three months later they separated and James filed an action for separate maintenance and for custody of the children, then ages 11, 8, 3 and 2. Patricia cross-complained and was awarded custody of the children, $50 a week total child support and $10 a week spousal support.

On September 24, 1964, immediately after the court order, James went "into hiding" and changed his name. He failed to make the first support payment, due October 1, and Patricia was unable to locate him. Shortly thereafter, Patricia and the children moved back to Ohio, where Patricia obtained an ex parte divorce. No spousal or child support was ordered because James was not subject to the jurisdiction of the Ohio courts.

James never made any of the payments pursuant to the California order. As a result, Patricia and the children lived in poverty and had to depend occasionally on welfare benefits to survive. The youngest child reached majority in May 1980, ending James's 16-year period of noncompliance with his support obligation.

Through the years Patricia made various unsuccessful attempts to locate James. His father, who lived in the same Ohio town where Patricia and the

children resettled, denied knowing of James's whereabouts, but visited California yearly. James's brother, William, also refused to reveal James's location, claiming he had promised to keep the information from Patricia and the children.

Patricia's attempts to locate James through the district attorney's office failed because she could not discover his social security number. His former employers were either unwilling or unable to divulge that information.

In 1975, Patricia learned James had "possibly" changed his last name to Martin and was living somewhere in Northern California. In August 1983, Patricia confirmed he was living in Santa Clara under the name James Martin. She located him and obtained a writ of execution attaching his wages to satisfy the $18,000 owed in past due support. In August 1984 Patricia and the children filed this action for fraud, conspiracy to defraud, intentional infliction of emotional distress and violation of a statutory duty of support (Civ. Code., § 196a).

Plaintiffs alleged James deliberately concealed his identity and whereabouts to avoid his legal and moral obligation to support his family, resulting in severe economic deprivation and forcing them to live at a subsistence level. They sought compensatory and punitive damages, claiming that in "failing to perform his statutory duty of support of his minor children, James . . . acted wilfully and maliciously and with wanton disregard for the well-being and welfare of [the children] . . . ."

James demurred to the complaint on two grounds; he argued it failed to state a cause of action and all claims were barred by the statute of limitations. After plaintiffs' third unsuccessful attempt to amend the complaint to survive demurrer, a judgment of dismissal was entered against Patricia and the children.

## II

This case presents fascinating questions of first impression. Do allegations of a parent's clandestine name change and deliberate concealment of his or her whereabouts, in an effort to escape paying court-ordered child support, state a cause of action for fraud? Is such conduct "outrageous" enough to constitute intentional infliction of emotional distress? Should the child "victim" of such parental abandonment be limited to recovering only back-due support payments or should he or she be allowed compensatory damages for the years of hardship?

Plaintiffs concede their attempt to hold James liable in tort for deliberately avoiding his undisputed support obligation is novel and lacks statutory or

case support. With respect to the causes of action for fraud and intentional infliction of emotional distress, they ask that we recognize a new theory of recovery; with respect to violation of the statutory duty to support, they ask that we create a new tort.

Intriguing as these issues are, their resolution is unnecessary to disposition of this appeal. ■ "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground. (Citations.)" (*Carman* v. *Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].) One asserted basis for demurrer was the statute of limitations. As will be shown, none of plaintiffs' causes of action could have survived demurrer on this ground. We need look no further to affirm the judgment.

Because the action itself is time-barred, plaintiffs' tort claims are moot. Accordingly, we decline to reach the merits of their case, deferring to the general rule barring consideration of matters unnecessary to the decision. (See *Coalition for L.A. County Planning etc. Interest* v. *Board of Supervisors* (1977) 76 Cal.App.3d 241, 246 [142 Cal.Rptr. 766]; *Agricultural Labor Relations Bd.* v. *Laflin & Laflin* (1979) 89 Cal.App.3d 651, 662-663, fn. 11 [152 Cal.Rptr. 800].)

■ The statute of limitations issue presented here is easily resolved. "In ordinary tort and contract actions, the statute of limitations . . . begins to run upon the occurrence of the last element essential to the cause of action." (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 187 [98 Cal.Rptr. 837, 491 P.2d 421].) The complaint reveals both the alleged tortious conduct and resulting injury to plaintiffs occurred in October 1964 when James disappeared, failed to make the first support payment due, and left his ex-wife and children with no reasonable expectation future support would be forthcoming. At that early date plaintiffs knew the facts which later formed the essence of each asserted cause of action. They knew defendant intentionally hid to avoid his duty of support and, presumably, their ensuing economic and emotional injury began, if not immediately, soon thereafter. They needed no additional facts to commence the lawsuit filed 19 years later.

The ineluctable conclusion of this analysis is that any cause of action arising from these facts accrued in the early days of James's abandonment of his family. Because of the children's ages, however, the statute would have been tolled for each until she reached the age of majority. (Code Civ. Proc., § 352, subd. (a)1; see *Perez* v. *Singh* (1971) 21 Cal.App.3d 870 [97 Cal.Rptr. 920].) The youngest child turned 18 on May 15, 1980.

Of the causes of action asserted, fraud and an action based on a statute have the longest limitations period—three years. (Code Civ. Proc., § 338, subds. 1, 4.) Thus, May 15, 1983, was the last day on which the youngest plaintiff could have filed her complaint; her older sisters had correspondingly earlier deadlines. (Of course, Patricia's claims against James expired about 16 years earlier.) The complaint filed on August 20, 1984, was clearly time-barred.

Plaintiffs attempt three avenues of escape from the harsh consequences of the statute of limitations. Each is a dead end.

First, plaintiffs seek protection under the " 'discovery rule' "—"a judicially recognized exception to the strict operation of the statute of limitations." (*Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 296 [146 Cal.Rptr. 271].) This rule allows tolling of the limitations period "until the plaintiff discovered or had notice of all *facts which are essential to the cause of action*. [Citations.]" (*Id.,* at pp. 296-297, italics added.) Plaintiffs argue they neither discovered nor had notice of "the true facts constituting [defendant's] fraud" until August 20, 1983—the date one of the daughters "positively confirmed" her father was living in Santa Clara under the assumed name "James Martin."

But this argument misses the mark. For the discovery rule to come into play, the cause of action itself must lie unsuspected; hidden facts relating to proof are of no consequence. The late-discovered information concerning defendant's alias and residence was not essential to any asserted cause of action. Thus, plaintiffs' ignorance of these facts did not stop the statute's running.[1]

Plaintiffs next contend James's fraudulent concealment of his changed identity and whereabouts constituted a continuing course of conduct that ended only when plaintiffs finally located him on August 20, 1983. They argue the statute of limitations did not begin to run until that date and, thus, the complaint filed exactly one year later was timely.

Plaintiffs cite no authority for their course of conduct theory. ▮ This is unsurprising since the proposition runs contrary to the fundamental rule that the statute begins to run from the time conduct becomes actionable. " '[W]here an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute

---

[1] If plaintiffs mean to suggest they needed this information in order to sue defendant, they are misinformed. They could have served him by publication pursuant to section 415.50 of the Code of Civil Procedure. (See *Sanford* v. *Smith* (1970) 11 Cal.App.3d 991, 998-1001 [90 Cal.Rptr. 256].) Patricia used a similar procedure in obtaining her second Ohio divorce.

of limitations attaches at once. *It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date . . . .'* (Italics added.)" (*Martinez-Ferrer* v. *Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316, 323 [164 Cal.Rptr. 591], quoting from *Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771, 773-774 [247 P.2d 133].)

The extended duration of James's disappearance added to plaintiffs' difficulties and, correspondingly, to their damages. But it did not postpone accrual of any cause of action or toll the statute of limitations. Moreover, plaintiffs' argument is logically inconsistent. Assuming the statute began to run only when the tortious course of conduct ceased, that event occurred on May 15, 1980, when James's long-evaded support obligation ended. By plaintiffs' own reasoning, the much later date when James was "found" is irrelevant.

Finally, plaintiffs argue defendant should be estopped from raising the statute of limitations as a defense in this action. They contend James's wrongful concealment of his whereabouts and masking his identity caused their delay in filing suit; strict operation of the statute would allow him to benefit from his "fraud." They cite *Pashley* v. *Pacific Electric Ry. Co.* (1944) 25 Cal.2d 226 [153 P.2d 325] for the proposition courts should find such an estoppel where the defendant's fraudulent concealment of "material facts . . . hindered the plaintiff from bringing an action within the statutory period . . . ." (*Id.,* at p. 231.)

In making this argument plaintiffs again mischaracterize their position during James's absence. Their inability to locate him did not preclude this litigation. As we earlier observed, plaintiffs had possession of all facts essential to their causes of action in the early days of his disappearance; they could have served him by publication then. Because defendant's conduct did not hinder plaintiffs in bringing their action, no grounds for estoppel exist.

The judgment dismissing the complaint is affirmed.

Smallwood, J.,* concurred.

**SONENSHINE, J.**—I reluctantly concur in the result. The plaintiffs waited too long to file suit. And this is true despite the fact a 10-year statute of limitations exists for the collection of judgments and commences to run

---

* Assigned by the Chairperson of the Judicial Council.

with *each* nonpayment of child support. (Code Civ. Proc., § 685.020, subd. (b).) The suit here is not for collection, but for resulting damages and other ancillary torts.

However, the plaintiffs could have stated a cause of action. Violation of a statutory duty is generally actionable in tort regardless of whether the statute provides a specific civil remedy. (*Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 651 [320 P.2d 16, 65 A.L.R.2d 1358]; *In re Marriage of McNeill* (1984) 160 Cal.App.3d 548, 556-558 [206 Cal.Rptr. 641]; *Laczko* v. *Jules Meyers, Inc.* (1969) 276 Cal.App.2d 293, 295 [80 Cal.Rptr. 798].)

A petition for a rehearing was denied May 23, 1988, and appellants' petition for review by the Supreme Court was denied July 13, 1988.