[Nos. B065073, B065187. Second Dist., Div. Two. June. 23, 1993.]

LAMBERT STEEL COMPANY, INC. et al., Plaintiffs and Appellants.
HELLER FINANCIAL, INC., Defendant and Respondent.

**COUNSEL**

Gibbs, Giden, Locher & Fleming, Glenn E. Turner III, Leon F. Mead II, Polston, Schwartz, Hamilton & Fenster, Stephen Fenster, Brant & Pettitt, Roger C. Pettitt, Gill & Baldwin and Kirk S. MacDonald for Plaintiffs and Appellants.

Cox, Castle & Nicholson and Lawrence Teplin for Defendant and Respondent.

**OPINION**

NOTT, J.—Appellants Lambert Steel Co., Inc., J. Mischel, Inc., Scott E. Campbell, and Steiny & Co., Inc., sought to enforce their mechanics' liens as priority liens ahead of a construction deed of trust. Respondent Heller Financial, Inc., is the successor to the holder of the note secured by the deed of trust. The judgment awarded damages to three of the four appellants against the owners of the property, Albertino Parravano and Pacific Sunset, Ltd., a limited partnership.[1] However, the trial court found the deed of trust to have priority over the mechanics' liens, which it discharged.

The sole issue raised on appeal by Lambert, Mischel, and Campbell is the question of priority. The trial court adopted respondent's interpretation of the controlling statutes, Civil Code[2] sections 3134 and 3135. We also agree with respondent's reading of the statutes and affirm the judgment.

As to Steiny, judgment was entered in favor of respondent.[3] Steiny challenges the trial court's ruling that discharged its mechanic's lien on the ground that it failed to give a required 20-day preliminary notice.

FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. In February 1981, Mr. Parravano purchased a parcel of land on Sunset Boulevard near Pacific Coast Highway. The property was improved with a motel and restaurant. Between 1981 and 1984, various site improvement activities were conducted, including building demolition; removal of trees, brush growth and other debris; installation of a security fence; drilling of test holes, which were later filled with gravel; and

---

[1]Neither of the owners is a party to the appeal.

[2]All statutory references are to the Civil Code unless otherwise stated.

[3]Steiny was awarded damages against two other defendants who are not parties to this appeal.

preparation of surveys. Mr. Parravano did not hire a general contractor, and he entered into separate contracts with each contractor.

In August of 1984, Abacus Mortgage Investment Co. agreed to lend Mr. Parravano $18 million to enable him to build the Pacific Sunset Project, a multilevel retail and office complex. Mr. Parravano executed a deed of trust dated August 25, 1984, to secure the note. On October 22, 1984, the deed of trust was recorded.

On October 25, 1984, Mr. Parravano transferred the property to the Pacific Sunset, Ltd.

On October 26, 1984, construction began on the project. On June 30, 1985, Abacus Mortgage was merged into respondent, which became the successor-in-interest to the Pacific Sunset loan, note and deed of trust.

Each of the appellants performed their contracts after the recordation of the deed of trust.[4] Between April and September 1988, each of the appellants recorded a mechanic's lien for the labor, services, equipment and material provided to the project.

Before construction was completed, Pacific Sunset defaulted on the loan. Appellants filed complaints seeking to foreclose on their mechanics' liens. (See fn. 4, *ante.*) While those actions were pending, a trustee sale was held on September 19, 1989, and a trustee's deed was recorded on October 11, 1989.

DISCUSSION

(1) *Pursuant to Sections 3134 and 3135, the Deed of Trust Had Priority Over the Mechanics' Liens*

Section 3134 provides that mechanics' liens are "preferred to any lien, mortgage, deed of trust, or other encumbrance upon the work of improvement and the site, which attaches subsequent to the commencement of the work of improvement." Under section 3135, however, "If any site improvement is provided for in a separate contract from any contract with respect to

---

[4]On June 13, 1986, Pacific Sunset entered into a contract with Lambert for reinforcing steel, tendons, mesh and other materials, equipment, and labor. On August 20, 1986, Campbell contracted to furnish and install the fire sprinkler system for the project. Steiny's contract to furnish and install electrical work was entered into on August 18, 1986. We are unable to locate a copy of the Mischel complaint or contract in the record, but there appears to be no objection by Mischel to respondent's statement that all of the appellants' contracts were made after the deed of trust was filed.

the erection of residential units or other structures, then the site improvement shall be considered a separate work of improvement and the commencement thereof shall not constitute a commencement of the work of improvement consisting of the erection of any residential unit or other structure."

 We interpret and apply these two sections as the trial court did: because the demolition and site cleanup work in this case was performed pursuant to contracts separate from the contract to build "residential units or other structures," the demolition and cleanup work was not the "commencement of the work of improvement" for purposes of section 3134. Thus, appellants' mechanics' liens were not entitled to priority over respondent's deed of trust.

### (a) *Section 3135 applies to the facts of this case*

Appellants' first contention on appeal is that section 3135 does not apply in this case, based on *Westfour Corp.* v. *California First Bank* (1992) 3 Cal.App.4th 1554 [5 Cal.Rptr.2d 394] review denied. *Westfour* has little precedential value in the matter before this court. Although there were two contractors and presumably two separate contracts between the contractors and the owner, the trial court in *Westfour* found the later contractor's work was part of the same work of improvement begun by the earlier contractor pursuant to section 3106.[5] (3 Cal.App.4th at pp. 1562-1563.) The appellate court upheld the factual finding as it was supported by substantial evidence, and it reached the same legal conclusion. (3 Cal.App.4th at p. 1563.) Section 3135, which explicitly distinguishes "site improvement" from "work of improvement" where the property owner enters into separate contracts for site improvement, was not at issue in *Westfour*. As might be expected, the opinion does not discuss the implications of separate contracts for site improvements. *Westfour* is both factually and legally distinguishable, and it is not controlling.

Appellants next challenge the meaning of the first phrase of section 3135, which states: "If any site improvement is provided for in a separate contract from any contract with respect to the erection of residential units or other structures . . . ." They contend that this language limits the application of section 3135 to residential construction, and that because the project was commercial in nature, section 3135 does not apply in this case.

---

[5]Section 3106 states: " 'Work of improvement' includes but is not restricted to the construction, alteration, addition to, or repair, in whole or in part, of any building, wharf, bridge, ditch, flume, aqueduct, well, tunnel, fence, machinery, railroad, or road, the seeding, sodding, or planting of any lot or tract of land for landscaping purposes, the filling, leveling, or grading of any lot or tract of land, the demolition of buildings, and the removal of buildings. Except as otherwise provided in this title, 'work of improvement' means the entire structure or scheme of improvement as a whole."

■ Statutory construction begins with determining the intent of the Legislature in order to effectuate the purpose of the law. (*Khan* v. *Medical Board* (1993) 12 Cal.App.4th 1834, 1842 [16 Cal.Rptr.2d 385].) We turn first to the words of the statute, and we give effect to the statutes according to the usual, ordinary import of their language. (*Ibid.*) Significance should be given to every word, and construction making some words surplusage is to be avoided. (*Ibid.*) In addition, the various parts of a statutory enactment must be harmonized by considering the particular section in the context of the statutory framework as a whole. (*Id.* at p. 1844.)

■ Appellants maintain that the terms "residential units or other structures" apply only to residential structures, a construction which ignores several words in the statute. The use of the word "or" indicates that the Legislature meant an alternative to residential units; likewise, "other" refers to something different or distinct from that already mentioned. (See Webster's Third New Internat. Dict. (Unabridged) (1981).) Giving these words their ordinary meaning, we find they refer to other types of structures in addition to "residential units."

Moreover, appellants' argument regarding the meaning of "residential units or other structures" takes that language out of context. The point of section 3135 does not appear to be to distinguish between types of structures. Rather, it seems the Legislature is differentiating two types of contracts, one for site improvement and the other for the erection of the structure. When those two contracts exist in a given construction project, regardless of whether it is residential or commercial, section 3135 applies.

The statutory context of section 3135 supports our interpretation. The mechanics' liens statutory scheme appears in chapter 2 of title 15, entitled "Works of Improvement." Chapter 1 of the title provides the general definitions which govern the construction of the title. (§ 3082.) Section 3102, which is part of chapter 1, defines site improvement,[6] which includes such things as removing improvements, trees or other vegetation, grading, filling holes, installing sewers, and even constructing underground areas, in other words, improvements other than buildings. In section 3106 (see fn. 5, *ante*), a work of improvement is defined to include the "construction . . . of any building." Section 3110, which is included in chapter 2, lists the persons entitled to a mechanic's lien, and states that those persons include "all

---

[6]Section 3102 provides: " 'Site improvement' means the demolishing or removing of improvements, trees, or other vegetation located thereon, or drilling test holes or the grading, filling, or otherwise improving of any lot or tract of land or the street, highway, or sidewalk in front of or adjoining any lot or tract of land, or constructing or installing sewers or other public utilities therein, or constructing any areas, vaults, cellars, or rooms under said sidewalks or making any improvements thereon."

persons and laborers of every class . . . contributing to a work of improvement . . . ." (See *Primo Team, Inc.* v. *Blake Construction Co.* (1992) 3 Cal.App.4th 801, 810-811 [4 Cal.Rptr.2d 701] review den.) None of these sections distinguishes between residential and commercial buildings for purposes of mechanics' liens.

Section 3131, also found in chapter 2, states: "A separate residential unit means one residential structure, including a residential structure containing multiple condominium units, together with any common area, or any garage or other improvements appurtenant thereto."[7] This language helps to explain why section 3135 employs the phrase at issue here. Under the California statutory scheme, the term "residential unit" has a broader meaning than simply a residence or a house. "Other structures" can therefore mean only that—any structure which is not a residential unit.

Section 3131 further provides that if a work of improvement consists of the construction of "two or more separate residential units, each such unit shall be considered a separate 'work of improvement,' and the time for filing claims of lien against each such residential unit shall commence to run upon the completion of each such residential unit." Appellants contend that section 3131 supports their reading of section 3135, because section 3131 determines the time for filing liens on residential subdivisions, which are built in phases of construction. However, this contention is without merit because section 3135 can logically be applied to any type of construction that requires site improvement before construction of the building itself begins.

■ Appellants also contend without supporting argument that the rule of *ejusdem generis*, codified in section 3534, requires the limitation of section 3135 to residential units and other structures appurtenant thereto. Section 3534 provides that "[p]articular expressions qualify those which are general." Though a rule of statutory construction, it is " 'by no means a rule of universal application . . . . When it can be seen that the particular word . . . was inserted, not to give a coloring to the general word, but for a distinct object, and when, to carry out the purpose of the statute, the general word ought to govern, it is a mistake to allow the *ejusdem generis* rule to pervert the construction.' " (*County of Sacramento* v. *City of Sacramento* (1946) 75 Cal.App.2d 436, 443-444 [171 P.2d 477], quoting *Hunt* v. *Manning* (1914) 24 Cal.App. 44, 48 [140 P. 39].) We are not convinced by appellants that section 3534 has any application to the question before us.

---

[7]Section 3105 similarly defines a separate residential unit as "one residential structure, together with any garage or other improvements appurtenant thereto."

(b) *Section 3135 was correctly applied to the facts of this case by the trial court*

██ Appellants begin this portion of their challenge to the judgment by taking the position that section 3135 is an exception to the general rule of section 3134. Citing *Barnes* v. *Chamberlain* (1983) 147 Cal.App.3d 762, 767 [195 Cal.Rptr. 417], they contend that it was respondent's burden to establish that the exception applied.

However, appellants listed the following pertinent facts in exhibit A to their trial brief as "Undisputed Facts." Between July 1981 and October 1984, Mr. Parravano contracted separately with various trade subcontractors to perform the following actions on the property: (1) clear brush, trees, and debris and fill holes; (2) demolish the preexisting structures and cap the preexisting sewers; (3) construct access paths for drilling rigs and other soil testing equipment; (4) drill holes for soil testing, geological engineering and other such activities; (5) survey for boundaries and topography, and place setting stakes, temporary bench markers, lathe stakes and permanent boundary markers and monuments; (7) deliver gravel; and (8) install a security fence. Looking once again to section 3102, it is clear that, with the possible exception of installing the security fence, which is discussed separately below, these activities fit within the definition of "site improvement." Since counsel for appellants agreed that these were the activities of the various subcontractors with whom Mr. Parravano had separate contracts, counsel agreed to all the underlying facts that triggered the application of section 3135. The trial court had before it only a question of law. (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 698, fn. 3 [139 Cal.Rptr. 700, 566 P.2d 602] [the ultimate conclusion to be drawn from undisputed facts is a question of law].) Thus, there is no merit to appellants' argument that respondent had a burden to establish the application of the statute. Whether respondent would have had a burden without appellants' stipulation to the facts will not be addressed herein. (*Spellis* v. *Lawn* (1988) 200 Cal.App.3d 1075, 1079 [246 Cal.Rptr. 385] review den.)

We reach the same conclusion with respect to appellants' contention that the trial court could not have determined whether section 3135 applied without reviewing the terms of the actual site improvement contracts. As the existence of the statutory elements was undisputed, the trial court had no obligation to analyze the contracts.

Without citation to any authority, appellants urge that section 3135 does not apply in a given case unless the property owner, in this instance Mr. Parravano, "intends to avail himself of the section 3135 exception." Nothing

in the mechanics' liens statutory scheme requires a showing of intent by any party.

■ Appellants additionally contend that it is unfair and against public policy to apply a "per se" rule such as the trial court did in this case. Section 3135 creates a per se rule requiring that where there are separate contracts for site improvement, "then the site improvement *shall be considered* a separate work of improvement." (Italics added.) Far from being unfair, we find section 3135 to create stability and predictability in the construction field. Appellants suggest that lenders should be required to review the preexisting contracts between the owner and subcontractors to determine whether such contracts were for site improvement. Such a procedure would surely have a negative effect on the approval of construction loans. Lenders would be placed in the untenable position of reviewing each contract made by the owner, with no ability to be sure that the owner has made all pertinent contracts available for review. Moreover, the current system, which requires the lender to inspect the site for visible signs of work before recording its lien and disbursing the funds, is not unfair to any of the subcontractors who come after the deed of trust is filed, such as appellants herein. Those subcontractors would know of the construction loan and expect to be junior to it at all times. We therefore conclude that section 3135 does not violate public policy and was not unfairly applied in this case.

(c) *Installing a temporary construction fence does not commence the work of improvement under section 3134*

■ Appellants final contention is that because "fencing" is part of the definition of works of improvement under section 3106 and is not part of the definition of site improvement under section 3102, installing the temporary fence was a work of improvement which began before the recording of the deed of trust. Therefore, they maintain, section 3134 gives their mechanics' liens priority over the deed of trust.

Temporary fencing is not an improvement at all. It is erected solely for security and liability purposes, not to improve the property. Temporary fencing is personal property that can be removed by its owner and used again and again. Because it is temporary and will be removed, it cannot be considered to be "construction, alteration, addition to, or repair, in whole or in part, of any . . . fence . . ." pursuant to section 3106, as appellants argue. Thus, there is no basis for holding that the installation of temporary fencing triggered the application of section 3134.

(2) *Steiny Has Raised a Moot Issue on Appeal*

Steiny contends that the trial court erred in ruling that it was required to give a 20-day preliminary notice. (§ 3097.) The trial court discharged the

liens of the other appellants after finding that the deed of trust had priority. Even if the trial court had found the Steiny lien to have been properly filed, it would likewise have dismissed the lien based on the lack of priority. Therefore, we find the issue to be moot, and need not address the merits of the arguments raised by Steiny. (*Spellis* v. *Lawn, supra,* 200 Cal.App.3d at p. 1079.)

DISPOSITION

The judgment is affirmed.

Boren, P. J., concurred.

**GATES, J.**—With regret, I must respectfully dissent.

Naturally, I wholeheartedly agree with my colleagues that we should strive always to determine the intent of the Legislature and, in so doing, should turn first to the words of the statute, giving significance to every word and avoiding constructions which make some words surplusage. Unfortunately, when I do so in this instance, strive as I may, I am unable to ignore, and thereby eliminate, the word "residential" from Civil Code section 3135, a term there used not once, but twice.

No purpose, nor rule of grammar, has been suggested to explain why the drafters of this section would have expressly stated that the exception it creates applies to "residential" structures if they intended it to apply equally to "nonresidential," i.e., "commercial," structures. If such had been their intent, would they have written, "If any site improvement is provided for in a separate contract from any contract with respect to the erection of *residential* units or other structures, then the site improvement shall be considered a separate work of improvement and the commencement thereof shall not constitute a commencement of the work of improvement consisting of the erection of any *residential* unit or other structure"? (Italics added.)

Would not the following have been sufficient, as well as free of all possible ambiguity, "If any site improvement is provided for in a separate contract from any contract with respect to the erection of any structure, then the site improvement shall be considered a separate work of improvement and the commencement thereof shall not constitute a commencement of the work of improvement"?

Our Constitution (Cal. Const., art. XIV, § 3) mandates that protection be afforded those whose labors and materials increase the value of land, and it is of no consequence that their contributions occur after a lender's lien is

perfected so long as that increase is part of a construction project, including site preparation, that was *visibly* commenced earlier. (Civ. Code, § 3134; *Walker* v. *Lytton Sav. & Loan Assn.* (1970) 2 Cal.3d 152, 156-157 [84 Cal.Rptr. 521, 465 P.2d 497].)

This, of course, is not to say that lenders are undeserving of suitable protection or that their role is socially less valuable than that of artisans and materialmen. While doubtless they are far better situated to safeguard their investments than are such potential lienors, in the absence of available and adequate financing, the latter will have nothing upon which to expend their labor and their supplies.

It is readily apparent, of course, why an exception to the general rule governing priorities should be made for residential housing, whether such construction takes the form of separate contracts entered into by one individual homeowner or occurs in the course of a massive modern project that will be spread over many years and which may involve many separate owners and many varying types of related structures. (See generally, Civ. Code, § 3131; *E. D. McGillicuddy Constr. Co.* v. *Knoll Recreation Assn., Inc.* (1973) 31 Cal.App.3d 891, 896-898 [107 Cal.Rptr. 899].)

Nonetheless, though we lack the ability to conduct hearings on the subject in order to enlighten ourselves in the premises, an advantage afforded only to our legislative brethren, it also appears that persuasive arguments could be made for eliminating section 3135's present residential restriction in cases involving the large commercial complexes that are so prevalent today. Less clear, however, is the need for such an exception when, as here, a single office building is planned and constructed as one indivisible project from the beginning of its site preparation to its ultimate completion. As a consequence, I personally would prefer to allow our legislators to assume the burden of making any necessary and appropriate amendments.

Appellants' petition for review by the Supreme Court was denied September 30, 1993.